WILLIAM W. WHEELOCK AND WILLIAM G. BIERD, RECEIVERS OF THE CHICAGO & ALTON RAILROAD COMPANY (CLAIMANTS), APPELLANTS, v. S. L. CANTLEY, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, IN CHARGE OF THE NORTH MISSOURI TRUST COMPANY, RESPONDENT.—50 S. W. (2d) 731.

St. Louis Court of Appeals. Opinion filed June 7, 1932.

*A. C. Whitson* and *Charles M. Miller* for appellants.

*Fry, Hollingsworth & Francis* for respondent.

HAID, P. J.—This is an appeal from a judgment allowing a claim as a general one but denying it a preference.

The record discloses that the Commissioner of Finance took charge of the North Missouri Trust Company on the morning of June 4, 1930; on June 25, 1930, the Commissioner gave written notice to all persons having claims against the Trust Company, to present the same to him and make proper proof thereof on or before October 27, 1930; that claimants on September 23, 1930, filed with the Commissioner their application for a preferred claim and due proof having been made to the Commission the latter approved the application and claim and presented the same to the circuit court for de-

termination as to priority of payment as required by section 5336, Revised Statutes of Missouri, 1929; that on November 22, 1930, the application and claim was heard and on March 12, 1931, the court entered its judgment denying preference or priority of payment to the claim but allowed it as a general claim. The claim of the receivers set out that they were appointed as such September 1, 1922, and set out four certificates of deposit issued by the Trust Company dated, respectively, May 31st, two dated June 2nd, and June 3, 1930, and aggravating the sum of $3765.55. Prior to September 1, 1929, the local agent of the receivers transmitted the funds of the receivers obtained from those having business with the railroad at Mexico, Missouri, by taking the cash and checks obtained from patrons of the railroad at Mexico to the Trust Company and obtaining a cashier's check or draft for the same which would, on the same day, be transmitted to the receivers at Chicago. On September 1, 1929, the Mexico Clearing House Association, composed of the banks of Mexico, agreed that they would make a charge, effective September 1st, on all drafts and cashier's checks, of ten cents per one hundred dollars or fraction thereof, and five cents for each additional one hundred dollars or fraction thereof. The agent of the receivers at Mexico advised the treasurer of the receivers at Chicago of this agreement and ruling of the Clearing House Association, whereupon the treasurer of the receivers instructed the agent to collect the checks and ship out the currency by train to the receivers at Chicago. Mr. Pollock, the then president of the Trust Company, on September 4, 1929, wrote to the treasurer of the receivers concerning the matter and asking "if a plan could not be worked out by which he would deposit his daily collections and you give us sufficient time to make collections on the different items and keep a balance in proportion to the business handled and then you could check against the funds without any charge being made" and expressed the belief that "this would be a much more satisfactory arrangement than shipping out the currency." On September 9, 1929, the treasurer of the receivers at Chicago wrote the president of the Trust Company acknowledging receipt of the latter's letter of September 4th, in which, among other things, he says, "I wish to state that it is impossible for us to open a standing deposit as suggested in your letter. As a matter of fact, for the past several years out agent has been receiving from your bank, so I understand, cashiers checks for his local items in cash, and as these cashiers checks are forwarded to Chicago for deposit, it practically constitutes a three or four day float before your bank is called upon to meet the same, thereby in a way giving you a standing deposit of over a thousand dollars a day from the Alton Company. Another reason

why I cannot open this account, is on account of the properties of this company being in the hands of receivers, and it is necessary for us to obtain court orders of approval of banks before placing the funds under the custody of the court therein.''

On September 24, 1929, the president of the Trust Company wrote to the treasurer of the railroad, ''I am enclosing you herewith sample slip, which shows how the Mexico Savings Bank handles the Wabash business and while this practically answers every purpose of the cashier's check or draft either it will keep us from breaking our rule in regard to issuing cashier's check or draft either, without charging and if this form meets with your approval you can return it to us and we will have some printed and handle the business that way.''

On September 26th, the treasurer of the railroad wrote the president of the Trust Company, acknowledging receipt of the latter's letter of September 24th, and stated, ''I am perfectly agreeable to the adoption of this system, but have modified the certificates of deposit, as you will note from the attached slip, by eliminating the necessity of placing the agent's name thereon, so that the same can become available at our banking depositary here by placing thereon our own endorsing stamp now maintained with our Chicago bank for that purpose. I understand that the Burlington Railroad, with which I am cooperating, expects to make a similar suggestion to you. As this modification does not materially change the certificate so far as your bank is concerned, I hope that the same will meet with your approval, and that you can place the same in effect just as soon as the slips are printed up. I am, therefore, writing our agent today, authorizing him to cooperate with you on this subject.''

On October 1, 1929, the president of the Trust Company wrote to the treasurer of the Alton, acknowledging receipt of the letter of the latter dated September 26th, and stating, ''We have fixed up the copy for the certificate in line with your suggestions and as soon as we receive same from the printer we will deliver them to your agent here and start using them.'' The certificate agreed upon and thereafter used was in the following form:

North Missouri Trust Company

Mexico, Missouri.

Mexico, Missouri, ............... 1930

C. & A. R. R. CO.—Receivers—has deposited in this bank,

...................................... Dollars _____

payable to its order, upon presentation and surrender of this certificate properly endorsed.

North Missouri Trust Company

Mexico, Missouri.

.....................Teller

The four deposits made for which the claim is prosecuted were, respectively, May 31, 1930, for $50; June 2, 1930, for $3373.61; June 2, 1930, for $207.23; June 3, 1930, for $134.71. At the time these deposits were made the agent of the receivers would hand the teller duplicate deposit slips, together with a prepared certificate of deposit, the teller of the bank would execute the certificate of deposit, retain one of the deposit slips and return the other deposit slip to the agent, initialed by the teller, which duplicate the agent retained for the purpose of exhibiting to the auditor of the railroad when he checked the station.

Such other facts as are necessary to be considered will set out in considering them during the course of the opinion.

The first point made by the receivers is that the trial court erred in denying a preference to their claim because of the character of the funds left with the Trust Company; that the fact of the funds being those of receivers, as such, established a trust relation between the Trust Company and the receivers. Four cases are cited in support of this proposition, Stone v. St. Louis Union Trust Co., 183 Mo. App. 261, 166 S. W. 1091; Farmers' Bank of Bowling Green v. Cantley (Mo. App.), 16 S. W. (2d) 642; Johnson v. Farmers' Bank, 223 Mo. App. 513, 11 S. W. (2d) 1090, and Nichols v. Bank of Syracuse, 220 Mo. App. 1019, 278 S. W. 793. We find nothing in these cases to support the contention of the receivers. In the first case, which is the principal one in this State relied upon by the receivers, the Trust Company was asserting a right to retain the deposits of the receiver in that case without the payment of interest thereon, contrary to the statutes of Missouri, upon the theory that because it became a surety upon the bond of the receiver it was treating the funds deposited by the receiver as an indemnity account, but no contract whatever to that effect was made between the parties. On the contrary the receiver agreed to pay the Trust Company, for becoming surety on his bond, 15 per cent of whatever fee he might receive as such receiver and the agreement to this effect contained the provision "that nothing herein shall require or obligate me to do anything not to the advantage of the trust or inconsistent therewith." The action of the Trust Company was based upon the theory that the receiver had waived a right which he had, but the court held that a receiver is not authorized to exercise his discretion with respect to funds in his hands but that he held the latter subject at all times to the orders of the court having supervision over the receivership; that all persons dealing with him are chargeable with notice of his limited authority and of the undoubted power of the court to modify or vacate altogether any agreement which he may make relative to the funds in his hands.

In the case of Farmers' Bank of Bowling Green v. Cantley (supra), checks were presented by a collecting bank to another bank for payment but instead of the latter paying the same in cash it issued its check to the collecting bank and then closed before payment of the check. It was held that there was not a reciprocal relation between the two banks, neither was a depositor in the other, that checks presented to the closed bank were presented for payment and not for credit. It was held, therefore, that the bank in the hands of the Commissioner held the money which it should have paid plaintiff impressed with a trust by virtue of the relation existing between it and the plaintiff, and the plaintiff was entitled to a preferred claim therefor.

In the Johnson case, supra, plaintiff had a deposit with the Farmers' Bank against which he drew and delivered a check to another for an amount within the deposit which he had in the bank. The Farmers' Bank refused the payment of the check and thereafter closed its doors. It was held that while the original relationship between the defendant and the Farmers' Bank was that of debtor and creditor, such relationship was changed when the check was drawn by plaintiff against his deposit and was presented to the defendant for payment. It was held that at the time the bank ceased to function it held plaintiff's money as a trust fund and, accordingly, that he was entitled to a preference.

In the Nichols case (supra), the bank was the agent of a purchaser of real estate and had the vendor deposit the deed with it agreeing that such deed would be held until money was received from a loan company when purchase price would be paid out of that money, although the money was already there. Held that the bank was a trustee, having received the money for the sole purpose of delivery to the vendor.

In their reply brief the receivers call attention to the decision in the case of Harrison Township v. People's State Bank (Mo.), 46 S. W. (2d) 165. That case was determined in favor of the preference because of a statute (article 9, chapter 85, Revised Statutes of Missouri 1929, sections 12184 et seq.) which requires certain things to be done respecting the deposit of funds of a township in a bank. These steps had not been taken. The bank knew that it had not been selected as a depositary in accordance with the act and it knew that none of the requirements of the statute had been complied with, and, therefore, a constructive trust arose justifying the allowance of the claim.

While it is true, ordinarily, that receivers are limited by the order of the court appointing them, that depends somewhat upon whether they are mere custodians, are appointed solely to liquidate a business or are authorized to carry on a business. In the latter

case where receivers are empowered to operate a business, they are clothed with considerable discretion and they may do such things in the operation of such business as they deem, in good faith, necessary to render the operation of that business successful. So that the receivers in the present instance having offices all along the line where money was being received by their agents, were vested with authority to direct the manner of the remittance of such money to them as in their discretion was best calculated to accomplish the purpose of the business in hand.

It is true that the account upon the books of the bank was carried in the name of the receivers and it is true that in their letter of September 9, 1929, the receivers wrote the Trust Company that it was impossible for them to open a standing deposit because the properties of the company were in their hands as receivers and it was necessary for them to obtain court orders of approval of banks before placing the funds under the custody of the court therein. But, so far as the record discloses, the receivers were attempting to meet some plan to avoid the collection charges fixed by the Mexico Clearing House Association and to have their funds so handled as might be most convenient to the administration of the affairs of the receivership. There was no evidence that anything in the receivership proceeding prevented the receivers from entering into the particular arrangement, or some similar arrangement; the only fact the receivers referred to in their letter was that they could not open a general deposit account under the terms of the order of their appointment except with the approval of the court. The bank here was not endeavoring to deprive the receivers of any assets due to the trust estate as was done in the first of the cases above referred to. There is no evidence whatever in the record to disclose that the receivers were not warranted in making temporary deposits which, when made, were dealt with by the bank as other deposits which it received were dealt with.

In this State the rule is that deposits made by trustees are usually considered simply as general deposits, and if the bank fails to pay them, the beneficiaries have no particular claims or rights over other creditors, but share the same as other creditors (Wm. R. Compton Co. et al., v. Farmers' Trust Co., 220 Mo. App. 1081, 279 S. W. l. c. 748) and that is true even when the deposit is a public fund made by an official charged with its custody, such deposit in the absence of statute, stands upon the same plane as other general deposits and a claim therefor is not entitled to preference. [Special Road Dist. v. Cantley, 223 Mo. App. 89, 8 S. W. (2d) l. c. 945; In re North Missouri Trust Co. (Mo. App.), 39 S. W. (2d) 417.]

There can be no doubt that in thus dealing with the bank the relationship of debtor and creditor arose between them and, conse-

quently, the receivers were entitled to no greater rights than other creditors. The certificates issued by the bank and which were approved by the receivers, each recited that the receivers had deposited a certain sum payable to their order upon presentation and surrender of the certificate properly endorsed. We are unable to see how a contract could be more specific in establishing the relationship of debtor and creditor.

Concerning the effect of turning over the money to the bank and receiving therefor certificates of the character here involved, it is said in 3 R. C. L., section 198, page 570:

"A certificate of deposit ordinarily is defined as a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit, which the bank or banker promises to pay to the depositor, to the order of the depositor, or to some other person or to his order, whereby the relation of debtor and creditor between the bank and the depositor is created. The words 'promise to pay' are not essential in the certificate, because the law implies such a promise when the fact of deposit is established. While money for which a certificate of deposit is given by a bank is, in legal effect, in the nature of a loan, yet it is not a loan in the ordinary sense of the term, but a real deposit within the meaning of those statutes which prohibit an insolvent bank from receiving deposits."

There is no doubt in our minds that the effect of the transaction in this case was the same as the prior transactions had between the parties when the agent would deposit his cash and checks received from patrons of the railroad, turn them over to the bank and receive a cashier's check or draft for the same. In both cases the title to the money and checks passed to the bank and the bank contracted to pay to the receivers or their order on demand the amount thereof. [Bank of Republic v. Republic State Bank, 328 Mo. 848, 42 S. W. (2d) l. c. 30.]

But the receivers contend that if the character of the funds did not establish a trust relation then the transactions constituted at least special deposits, entitling the receivers to a preferred claim. The facts, it seems to us, wholly fail to sustain the view that there was any intention between the parties to create a special deposit. Special deposits usually consist of the delivery to one of an article or money to be returned to the depositor under the conditions provided in the agreement of deposit, or, in the case of money, to return the same money or its equivalent to the depositor or to a designated third person upon the happening of some event. [In re North Missouri Trust Co. (Mo. App.), 39 S. W. (2d) l. c. 414.] In the case of the deposit of money for a prescribed purpose, if the depositary uses the money he must nevertheless pay the equivalent thereof to the person entitled thereto upon the happening of the event agreed upon as in the case of Nichols v. Bank of Syracuse, 220 Mo.

App. 1019, 278 S. W. 793. In the present case there was no agreement that the bank was to surrender to the receivers the checks, drafts and money which were evidenced by the certificates of deposit but the bank received the checks, drafts and money for use in the interim between the date of the deposit and the surrender of the certificate and that purpose was clearly expressed in the correspondence which took place between the receivers and the bank prior to the adoption of the scheme of issuing certificates of deposit. The receivers cite in support of this proposition the case of Smith et al. v. Fuller et al., 86 Ohio State 57, 99 N. E. 214. But in that case the court held that the deposit must have been regarded as a special one because under their view of the law, the trustees had no power or authority to make a general deposit of trust funds. As we have shown, however, that is not the rule in this jurisdiction.

The last proposition advanced by the receivers is that the Trust Company was insolvent or in failing circumstances at the time of the making of the deposits in question. We have examined the evidence carefully and fail to find any proof of insolvency up to the time the bank closed its door. Receivers' witness, Mr. Pollock, who was chairman of the board at the time the bank closed its doors, testified that on the night before it closed he had negotiations with a savings bank to take over the Trust Company to protect the depositors of the bank—to keep from sacrificing the assets of the Trust Company; that there had been a run on the Trust Company for two or three days and that could not continue indefinitely; that he attributed the run to the failure and closing of other banks in the vicinity.

Another witness for the receivers, Mr. C. A. Greenlee, testified that the total assets of the bank were $1,030,036.12 and that the total of the liabilities were the same; that he had no opinion as to the value of the assets beyond that shown by the statement. This statement of the liabilities, however, does not show what part thereof consists of capital stock and surplus, which items are not to be taken into account as liabilities in determining the solvency of the institution. [State ex rel. v. Cox, 327 Mo. 790, 38 S. W. (2d) 1081.] So that it is impossible to determine from the testimony of this witness what the financial status of the Trust Company was at the date of the issuance of the certificates of deposit. As is stated in the case of State v. Hill (Mo.), 44 S. W. (2d) l. c. 105, as to the capital stock and surplus listed as liabilities, "Those items were not liabilities as to creditors, and should not be counted in determining the solvency of the bank; that is, its ability to meet its obligations in the usual course of business."

The only proof offered concerning insolvency was that for three days preceding the actual closing of the bank there had been a run upon it. There is absolutely no evidence, however, as to what

amount the bank had available to meet the run, it is not shown what amount was withdrawn during that period nor that by reason of the fact of the run the bank was in a failing condition. It may well be that the officers of the bank, after such a run, may have concluded that if the run continued it would have to sacrifice its assets and thus cause loss to its depositors, while a closing then would protect them, although the bank may not at that time have been insolvent. There is, therefore, an entire lack of proof either of failing condition or insolvency.

It results that the judgment of the circuit court must be, and the same is hereby, affirmed. It is so ordered. *Becker* and *Nipper, JJ.*, concur.