SECURITY NATIONAL BANK SAVINGS & TRUST COMPANY, a Corporation, v. O. H. MOBERLY, Commissioner of Finance, ET AL., Appellants. —101 S. W. (2d) 33.

Division One, December 14, 1936.

*William T. Jones, Harold R. Small* and *William H. Biggs* for appellants; *Carter & Jones* of counsel.

*Salkey & Jones* and *Fred A. Eppenberger* for respondent.

HAYS, J.—This is a suit in equity to establish certain claims against the assets of the Chouteau Trust Company, in liquidation, as preferred claims against its assets: The amended petition is in two counts, the first count involving the sum of $26,665.40, and the second count the sum of $1134.60. There was a decree in favor of plaintiff on the first count and against the plaintiff in the second count. All the defendants appealed from the judgment and decree rendered on the first count.

The facts alleged in the first count are these: One Bartin conveyed to the Chouteau Trust Company, as trustee, a corporation authorized to do both a trust and a banking business, the Winston-Churchill apartment house property situate in the city of St. Louis to secure the payment of notes aggregating $500,000, upon which he was to make certain monthy deposits with the trustee on principal and interest. Upon the making of such deposits the grantor was relieved of any further liability concerning them. On January 14, 1933, said trust company was placed in the hands of defendant State Commissioner of Finance for the purpose of liquidation. Then on deposit

in said trust company was the sum of $26,665.40, representing an accumulation of the aforesaid monthly deposits and being held by the trust company for the principal and interest due on certain of said notes, and augmenting the assets of said trust company in the hands of the commissioner by that amount. "Said trust deposits were made . . . for the sole and exclusive purpose of paying the principal and interest as hereinabove set out and were received by said Chouteau Trust Company as trustee and placed in a special trust account for the sole and exclusive purpose but were wrongfully commingled with the general funds of said trust company, contrary to the provisions of said deed of trust." Plaintiff Security National Bank Savings & Trust Company, a corporation, is the duly appointed substitute trustee in said deed of trust, and sues on behalf of the note holders. The claim was duly filed with the commissioner for said sum who rejected same in its entirety, as a common or preferred claim, and this suit to establish said claim as a preferred claim was duly brought.

As this appeal is only from the judgment as to the first count, the allegations contained in the second count may be disregarded.

The joint answer of the defendants in legal effect, and so far as need be noted, contained a specific denial of the Chouteau Trust Company's alleged wrongful commingling of said funds with the general funds of said institution, also contained admissions of the other constitutive facts alleged in plaintiff's petition and a denial that the claim was entitled to preference.

At the trial plaintiff stood upon an agreed statement of facts which was filed and submitted. Defendants introduced the former secretary of the Chouteau Trust Company who had served it in that capacity up to the day it was closed. He testified in substance that he had direct charge of the operation of that company and was familiar with its duties respecting the Winston-Churchill apartment house note issue; that upon receipt of the monthly checks, which were made payable to that company as trustee, the company as such trustee deposited them in its general banking department in an account known as the Winston-Churchill account.

The agreed facts were that John J. Bartin, as grantor, by a certain deed of trust in the nature of a mortgage conveyed to the defendant Chouteau Trust Company, as trustee, certain property in the city of St. Louis known as the Winston-Churchill apartment house; that said deed of trust secured payment of $500,000 in notes in the sum of $500 each.

Described generally, the notes secured by said deed of trust were, under the provisions of the mortgage, to mature at different dates, the first thirty of said notes, or $15,000, maturing on February 15, 1930, two years after the date of the deed. Thereafter, on February 15th of each year until 1938, certain other of said principal notes

were to mature, so that by February 15, 1938, $150,000 of principal was to have been retired and the principal amount falling due on February 15, 1938, was to be the balance of $350,000. Interest coupons were attached to these notes which matured on the fifteenth day of February and August of each year. In order to meet these semi-annual interest payments and annual principal pay-offs, the mortgage obligated the mortgagor, to make, beginning February 15, 1929, certain regular monthly deposits with the trustee sufficient in amount to cover one-sixth of the next maturing semi-annual payments and one-twelfth of the next maturing annual principal pay-off.

The fund in suit represents the regular monthly checks which had been received by the bank during the eleven prior months for deposit with it to meet the principal and interest payments which were to come due on February 15, 1933. All of them were made payable to ''Chouteau Trust Company, Trustee'' and each was endorsed ''Chouteau Trust Company, Trustee.'' Copies of the letters of transmittal accompanied them when they were received by the trustee. These letters set forth the principal of the check and that the deposit is due under the deed of trust. All of said checks, as and when received by the Chouteau Trust Company, were deposited in an account known as. ''Winston-Churchill Monthly Deposit Account.''

I. The respondent bases its case upon the theory that said fund was as received and accepted a ''special deposit'' and the same became impressed with a trust to which the respondent, as successor trustee on behalf of the note holders, is entitled as a preferred claim.

Rules and principles need to be sought in our precedents as a guide in resolving this case.

In this State the rule deduced in Paul v. Draper, 158 Mo. 197, 59 S. W. 77, and subsequently followed by this court, is that deposits made by fiduciaries are usually considered simply as general deposits, even though the depository has knowledge the funds are trust property and the depositor a fiduciary. The relationship thereby created between the fiduciary and the depository is that of creditor and debtor and, on failure of the depository to repay the deposits, the beneficiaries share ratably with other creditors and have no right of priority or preference over the latter in respect of the assets of the depository. [Paul v. Draper, supra; 81 Am. St. Rep. 296; City of Fulton v. Home Trust Co., 336 Mo. 239, 78 S. W. (2d) 445; Wheelock v. Cantley, 227 Mo. App. 102, 50 S. W. (2d) 731, and cases cited, l. c. 109.] This is the established general rule. [Restatement, Trusts, sec. 12, Comment h.]

In Paul v. Draper the decision in effect defined special deposits by pointing out the elements which were lacking in that case to constitute a deposit of that nature, and gave this as a summation: ''In other words there is no equity founded on agreement, no wrongful conversion and no relation of the debt to the assigned property to en-

title the plaintiff to preferential payment.'' This definition, expressed in general terms, is complete in its scope. Within the limits of that comprehensive statement specific statements of the elements of a special deposit appear in subsequent decisions, among them this, in the Fulton case, supra (336 Mo. l. c. 247, 78 S. W. (2d) l. c. 449) : ''A special deposit of money in a bank usually consists of the delivery thereof to the bank under or pursuant to an agreement or arrangement between the depositor and the bank whereby the bank undertakes to hold same for a prescribed purpose, assuming the relation of a mere trustee or bailee thereof, and to return the same money or its equivalent to the depositor, or to a designated third person upon the happening of the event agreed upon.''

The presumption obtains that the deposits were general, as defined above, and the respondent has the burden of showing that on one ground or another of those stated in the rule the deposits were special. [Ellington v. Cantley (Mo. App.), 300 S. W. 529, 530.]

■ II. As supporting its contention, that ''Missouri courts uniformly hold that where, as in this case, a deposit is made for a 'distinct and specific' purpose it is a special deposit and becomes impressed with a trust,'' respondent cites a number of cases, and particularly these later ones: In re Sturdivant Bank (Mo. App.), 89 S. W. (2d) 89; Vandivort v. Sturdivant Bank (Mo. App.), 77 S. W. (2d) 484; In re Farmers Exchange Bank of Gallatin (Mo.), 37 S. W. (2d) 936; In re Central Trust Co. of St. Charles (Mo. App.), 68 S. W. (2d) 919; and Fulton v. Home Trust Co., 336 Mo. 239, 78 S. W. (2d) 445, affirming (on certification) same case titled In re Home Trust Co. of Fulton (Mo. App.), 69 S. W. (2d) 312.

The most recent of these is In re Sturdivant Bank (Mo. App.), 89 S. W. (2d) 89, relied on by respondent as a parallel to the present case. It groups and cites as kindred cases those appearing on page 92 of that report, and the most recent of the latter being Vandivort v. Sturdivant Bank (Mo. App.), 77 S. W. (2d) 484, wherein kindred cases are also cited l. c. 486. Space does not permit nor do the demands of the instant case require an extensive review of such authorities. Rather will it suffice to examine a few and note the principle that governs them all.

The Sturdivant Bank case, supra, involved a pay roll deposit (and another not necessary to note). The bank sought, unsuccessfully, a general account from the depositor. The parties then entered into an oral agreement for opening a pay roll account. No open account was maintained, but as the pay checks were drawn, the total amount to be paid out was determined and a sum to cover the exact amount thereof was deposited in bank in the form of a check drawn against the dry goods company's general account in some other bank. From such deposit the employee's pay checks would be paid as presented. It was understood, and the understanding was adhered to by the

parties, that none other than pay checks would be paid out of that account. The pay roll account was paid out practically as soon as it was deposited for the special periodic payment of the pay checks. The court held that such account was a general deposit. Clearly that account was intended by the parties to be and it was segregated and kept intact.

In re Farmers' Exchange Bank of Gallatin, 327 Mo. 640, 37 S. W. (2d) 936, funds of wards, pursuant to agreement between a guardian and the bank, were turned over to the bank to be invested in bonds or first mortgages on real estate. The bank in violation of the agreement, and contrary to Revised Statutes 1929, section 418, invested the funds in unsecured and worthless notes. The bank was held to be a trustee *ex maleficio* and the deposit special.

But in cases where there was no agreement or instruction the result is the opposite of the result reached in that case and its like. For example: Fred A. Boswell Post of American Legion v. Farmers', etc., Bank of Mt. Vernon (Mo. App.), 61 S. W. (2d) 761, the treasurer of the post, who was also the bank's cashier, deposited the post's funds in the bank *to be kept intact for a single and special purpose*, but the bank had *no instruction to keep the funds separate*, an award of preference was reversed on the authority of Paul v. Draper, and Wheelock v. Cantley, supra. Butcher v. Butler, 134 Mo. App. 61, 114 S. W. 564, was ruled in like manner and on the same ground.

All the Missouri cases, those referred to as well as the decisions specifically mentioned, were essentially, where not expressly ruled upon the doctrine which is correctly stated in the Vandivort case, supra, l. c. 487, in the following language:

"Whether or not the bank in fact commingles the deposit with its general funds and uses it as its own is not determinative of the right or not of the depositor to claim the deposit as a special deposit, *but it is the right or not of the bank to so commingle and use the deposits that is determinative.* (Our italics.) If when the deposit is made there is an agreement, express or implied, that it shall not be commingled with the other assets of the bank and used as its own, but shall be kept intact as a separate deposit for a specific purpose, this constitutes a special deposit, and the fact that the bank without right commingles the deposit with its other assets and uses it as its own, so that it cannot thereafter be traced and identified, does not defeat the right of the depositor to have the amount of the deposit out of the assets of the bank."

In brief, in those cases in which it was determined the deposits were special there was "an equity founded on agreement" whereby by reason of the deposit the bank "became a trustee, agent or bailee" of the fund for the benefit of the *cestui que trust* as laid down in Paul v. Draper, supra. And, as was pointed out in the Mt. Vernon Bank case, 334 Mo. 549, 66 S. W. (2d) 850, the allowance of an

equitable preference is on the theory that the *cestui que trust* is given back only his own property the title of which he never lost.

Yet the respondent contends that whether the funds were rightly or wrongfully commingled is of no particular importance, relying in this respect on a statement we made in the Fulton Trust Company case, 336 Mo., supra, on its certification to this court from the Kansas City Court of Appeals. In the statement referred to we made the comment that the contention concerning special deposits, as well as the other points involved in the case, were well reasoned and correctly ruled in the majority opinion of the Court of Appeals. The ruling was that the deposit involved was general. We ruled the same way, applying, as did the Court of Appeals, the general rule which is quoted early in the present opinion. The Court of Appeals, after so deciding, made occasion to add this expression, a part of which we italicize and put within parenthesis, to-wit:

"However, the rule has been greatly relaxed so that where the money deposited is to be used for a special designated purpose, it may still be regarded as a special one, even though the funds were deposited (*under an agreement allowing them to be mingled with other funds*) in the bank and they are so mingled that the identical money deposited can no longer be identified."

It is evident, in view of our actual ruling, there was no call for our approval of the matter now italicized and we confess to having inadvertently overlooked the significance of the same. We observe that it trenches upon if it does not entirely delete the principle, that "it is the right or not of the bank to commingle and use the funds as its own that is determinative." Moreover, it finds no support in the citations employed by the Court of Appeals, as we read them, viz., In re North Mo. Trust Co. of Mexico, Mo. (Mo. App.), 39 S. W. (2d) 412; American Legion Post case, supra; Craig v. Bank of Granby, 210 Mo. App. 334, 238 S. W. 507; City of Miami v. Shutts, 59 Fla. 462, 51 So. 929. To say the least, the expression has a tendency to mislead. We now explicitly state that we disapprove that expression as made in the Court of Appeals' decision, or in other decisions, if any, rendered by this court or any other appellate court of the State. But we do not, of course, mean to imply in cases involving deposits coming within the Paul-Draper classification as special, a right to preference is conditioned upon tracing the specific money deposited.

Thus, Missouri is in harmony with the greater weight of authority as the same is represented in Restatement, Trusts, section 12, Comment *h*: "If money is deposited in bank for a special purpose, the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes."

So, the mutual intention of the parties as expressed in the provisions of the mortgage in relation to the deposits, the subsequent

acts of the parties in handling·them, and the custom of banks, must in the case at bar control in determining the nature of the deposits. [Craig v. Bank of Granby, 210 Mo. App. 334; Mo. Mutual Assn. v. Holland Banking Co., 220 Mo. App. 1256, 290 S. W. 100; Commercial Bank of Penn. v. Armstrong, 148 U. S. 50, l. c. 59-60.]

It is plain that under the mortgage the Chouteau Trust Company became the agent of the parties. The mortgagor, upon making the interest and partial payments to the company became freed from liability in relation thereto, and, so far as the company's subsequent duty was concerned, dropped out of further consideration, and the note holders agreed to look solely to the trust company with respect to such payments. Under the general law of agency an agent may assume either a contractual or fiduciary liability with respect to money paid him by the principal. The precise question here is, which kind of a duty to the note holders the agent did assume. To the particular provisions in the mortgage bearing on that question we will presently look. As regards the jurisprudence of this State the present case is peculiar in that the company was authorized to act and did act in a dual capacity. It seems clear enough that in receiving and depositing the payment checks it acted in a fiduciary capacity. The question is then, in what capacity did the company receive the deposits. So that, it would seem that the rules that we have found to be ordinarily operative are adapted to the present situation, notwithstanding the duality of capacity we have referred to, for the intention of the parties as determined in the manner shown above would still be the decisive factor. The rule as deduced by the American Law Institute is thus stated: "A trust company or bank which makes in its own banking department a general deposit of funds held by it as trustee thereby commits a breach of trust, since in so doing it is dealing as an individual with itself as trustee. *By the terms of the trust, however, the trustee may be permitted to make a deposit.*" (Italics ours.) [Restatement, Trusts, section 170, Comment *m.*] Professor Bogert states in his work on Trusts and Trustees, Vol. 3, section 598, that "It is undoubtedly common practice to place all idle trust funds on deposit in the institution which is administering the trust. . . . . The deposit by a trust company or bank with its own commercial department is in substance a contract by the trustee with itself for the safe-keeping of the trust moneys for a consideration. The banking department does not retain the trust cash in a box in its vault ready to deliver over to the trust department on demand. But the trust department passes absolute title to the trust cash and commercial paper to the banking department in return for a contract obligation of the banking department to honor checks and often to pay a small rate of interest."

We now consider those salient provisions of the mortgage upon which the counsel rely. The note holders agreed to look to the

trustee to apply the deposits (checks) received by it from the mortgagor when and as received to the payment of the notes and coupons on their due date and surrender. It is next provided:

"No such deposit shall draw interest, and said trustee shall incur no liability other than for the amounts actually deposited with it to be paid to the holder or holders of said notes and/or coupons as aforesaid.

"The trustee hereunder *may deposit in its banking department all of the funds* which may at any time be received by it under any of the provisions of this indenture *or in such other bank, or banks, as it may in its discretion select*, and said trustee shall not be required to hold said deposits *in specie* or currency, *but may invest the same*, in certificates of deposit, called bonds, Municipal bonds, call money loans, secured by proper collateral or government or listed bonds, and any interest or income thereon shall belong to said trustee as compensation." (Italics ours.)

It is the contention of respondent that there were facts as follows identifying the deposits as special:

(a) They were made for one definite special purpose of paying designated note holders and certain designated notes at a certain designated time, pursuant to the mortgage; (b) no interest was to be paid by the bank on the deposits; (c) the bank was to receive a compensation for handling the deposits; (d) the checks were payable to, received and endorsed and deposited in the bank by "Chouteau Trust Company, Trustee," the fund was kept in a special account designated by the title already stated; (e) the depositor retained no control over the account and could not draw checks on it; and (f) the trust company could not handle the account as it could other deposits, but was limited to a special type of investment.

Concededly correct are (a), (b) and (d). However, it plainly appears from the preceding discussion that the matter contained in (a), (b) and (d) was insufficient to make the deposits special.

As to (b), that no interest was to be paid by the bank on the deposit, that fact is not determinative under the rule stated above. Its significance lies rather in its tendency to show a debtor and creditor relationship.

As to (c), the record shows that the bank was to receive no compensation for handling the deposits. The trust company as trustee under the express language of the provision of the mortgage was to have as its compensation as trustee interest and profits the trustee might receive by investment in one of the designated forms which might return interest or profits to the trustee.

With respect to (d), a like contention was made in the leading case of Butcher v. Butler, 134 Mo. App. 61, in which *the facts did not show that the funds deposited were to be kept separate and the bank deprived of their use* but that, "when the time should come for

the money to be paid out, the obligation of the bank was to make the payment out of its general funds." There was nothing, the court said, "to change our conclusion that this was a general deposit in the fact that the bank entered the transaction on its books in what it called 'a trust fund account.' That was a mere name used in bookkeeping. . . ." The American Legion case, supra, is a similar example.

As to (e), the lack of the depositor's right to control the account and draw checks on it does not appear. It may be reasonably inferred that from February 15, 1929, that the interest and partial payments were made by the mortgagor, received and deposited by the trust company as trustee in its banking department and distributed by the trustee out of that account to the various note holders. Inferably the trust company as trustee either drew checks upon that account payable to the note holders, or issued exchange to them on its correspondent banks, and charged same against said account, or balanced the account in some other appropriate banking mode.

The statement contained in (f) is correct or incorrect according to our interpretation of the mortgage provision last above quoted, and this we now more minutely consider.

Under that provision the trustee is not required to hold the payment in specie or currency but is given optional authority and clothed with discretion to handle all funds received by such trustee against the next succeeding due date of principal or interest in one or the other of two distinct methods; by the one, to deposit the payments in the company's banking department or in any other bank or banks the company as trustee might elect—without condition with respect to the form or nature of the deposits; by the other, to invest the moneys on hand in designated classes of interest bearing securities; and retain the interest or income therefrom. It would be a strained construction of the last clause to say that in whatsoever form of deposit and in whatsoever bank the trustee might elect to make it, the deposit was impliedly *required* to be interest bearing. As ready shown, the deposits on the face of the record thereof, were not in an unusual or inappropriate form for general deposits, and the company's banking department, as indicated by its acts and records, received them as such, intermingled and used them as its own, and became a debtor of the company as trustee to the use of the note holders: all in accordance with the common practice of trust companies having banking departments. On principle the situation is the same as if the company had in like manner made the deposits in some other bank, as it was at perfect liberty to do.

The respective counsel cite us to numerous decisions in other jurisdictions involving situations similar to this on the facts in most respects but not in all. We have given careful consideration to those authorities, but we deem it unnecessary to further lengthen this opinion by noting them herein. We are of opinion that the authorities we

have cited are adequate to rule the case correctly, and accordingly we hold that the fund involved herein consisted of general deposits, and that respondent, by the judgment below, was erroneously awarded a preference on its claim pleaded in the first count of the petition. Though the disposition made of the second count by the court below is not contested, yet, since the judgment is an entirety—right in part and wrong in part,—it becomes necessary to reverse the judgment and decree, with directions to the circuit court to enter another anew on both counts, allowing plaintiff's claim under said first count as a common claim in the sum of Twenty-five Thousand, Twenty-seven and 90/100 Dollars ($25,027.90) in conformity with this opinion. Let that be done.

All concur.