# MARCH, 1937.

THE WESTERN UNION TELEGRAPH CO., A CORP., RESPONDENT, v. FIDELITY BANK & TRUST CO., A CORP., IN CHARGE OF O. H. MOBERLY, COMMISSIONER OF FINANCE FOR LIQUIDATION, APPELLANT.—103 S. W. (2d) 489.

St. Louis Court of Appeals. Opinion filed April 6, 1937.

Rehearing Denied April 20, 1937.

Writ of Certiorari Denied July 2, 1937.

*Jones, Hocker, Gladney & Jones* and *Sullivan, Reeder & Finley* for respondent.

*Leahy, Walther, Hecker & Ely* and *Herbert E. Barnard* for appellant.

866

SUTTON, C.—This case was tried on an agreed statement of facts, as follows:

"The Fidelity Bank and Trust Company, of the City of St. Louis, on October 22, 1931, was closed by order of its board of directors. On November 22, 1931, by an order of liquidation made of that date, the said Fidelity Bank and Trust Company was duly placed in charge of the Finance Commissioner of the State of Missouri, under the laws of said State.

"On October 21, 1931, City Lake Coal Company, desiring to purchase a money transfer order from the claimant, The Western Union Telegraph Company, paid to and deposited with Fidelity Bank and Trust Company the sum of $200, with which to pay for said money transfer order, and thereupon Fidelity Bank and Trust Company, by its treasurer, duly issued and delivered to The Western Union Telegraph Company its treasurer's check No. 23169, dated October 21, 1931, in said sum, payable to The Western Union Telegraph Company. On the same date, October 21, 1931, Joseph Greenspon's Sons Iron & Steel Company paid to and deposited with said Fidelity Bank and Trust Company, for the use and benefit of The Western Union Telegraph Company, the following several sums, to-wit, $1,000, $175, $104.-84 and $376, which sums were severally deposited for the purpose of purchasing and paying for money transfer orders to be issued by The Western Union Telegraph Company, and thereupon said Fidelity Bank and Trust Company, by its treasurer, duly issued and delivered to The Western Union Telegraph Company its several treasurer's checks for said sums, respectively, as follows: Treasurer's check No. 23170 for $1,000, Treasurer's check No. 23171 for $175, Treasurer's check No. 23179 for $104.84, Treasurer's check No. 23180 for $376.

"After the delivery of said five treasurer's checks to it by said Fidelity Bank and Trust Company the said claimant duly issued its five several money transfer orders, payable to the parties designated by said City Lake Coal Company and Joseph Greenspon's Sons Iron & Steel Company, all of which money transfer orders were duly paid by said claimant.

"On October 22, 1931, all of said five treasurer's checks were in due course deposited in the First National Bank in St. Louis, and were in due course returned to said claimant on account of the closing of said Fidelity Bank and Trust Company on October 22, 1931.

"At the time of the closing of said Fidelity Bank and Trust Company it had on deposit in its own tills and vaults and in other solvent banks and trust companies cash funds greatly in excess of the sum of $1,855.84, the aggregate amount of said treasurer's checks. No part of said several sums has been paid by said bank.

"Prior to the issuance of said money transfer orders The Western Union Telegraph Company had refused to credit the said City Lake Coal Company and Joseph Greenspon's Sons Iron & Steel Company, and required that said money transfer orders be paid for in cash. Said several sums were deposited with the Fidelity Bank and Trust Company by said City Lake Coal Company and Joseph Greenspon's Sons Iron & Steel Company for the purpose of paying for said several money transfer orders, and said several treasurer's checks were issued by said Fidelity Bank and Trust Company for the purpose of transferring said sums to The Western Union Telegraph Company. The Western Union Telegraph Company paid its said money transfer orders issued for said respective sums before said treasurer's checks were returned to it by the First National Bank in St. Louis, and before it learned of the closing of said Fidelity Bank and Trust Company.

"This claim is admitted as a general claim and same is submitted to the Court to determine the question of priority."

The trial resulted in a judgment for claimant, allowing its claim in the sum of $1855.14 as a preferred claim. Defendant appeals.

Usually a statement of facts is agreed upon for the purpose of setting at rest all dispute as to the facts. Yet the chief contention here arises out of different interpretations of the language used in stating the facts. But when the statement is read as a whole, the conclusion is inevitable that the transaction involved amounted to nothing more nor less than the purchase of treasurer's checks by the payment of the cash therefor over the counter of the bank. In such case no preference is allowed. [McClure Garage v. Sturdivant Bank (Mo. App.), 76 S. W. (2d) 438; Hoffman v. Sturdivant Bank (Mo. App.), 76 S. W. (2d) 441; Bank of Republic v. Republic State Bank (Mo.), 42 S. W. (2d) 27; Smalley v. Queen City Bank (Mo. App.), 94 S. W. (2d) 954; Cormandy v. Wells-Hine Trust Co. (Mo. App.), 44 S. W. (2d) 172; Security National Bank Savings and Trust Co. v. Moberly (Mo.), 101 S. W. (2d) 33; 73 Amer. Law Reps. Annot. 66.

Respondent urges in argument that the agreed statement expressly recites that respondent refused to credit the Coal Company and the Greenspon Company and required that the money orders should be "paid for in cash," that the several sums were paid to the bank by the Coal Company and the Greenspon Company "for the purpose of purchasing and paying for" the money orders, that said sums were

paid to the bank "for the use and benefit of" the respondent, and that the treasurer's checks were issued by the bank "for the purpose of transferring said sums" to the respondent. It is true that the agreed statement so recites. But over against this phraseology is the fact that the Coal Company and the Greenspon Company, instead of paying the money to the respondent, paid it to the bank for the respondent, and the respondent thereupon elected to take treasurer's checks therefor instead of the money which it could have had for the asking. The transaction is no different than if the Coal Company and the Greenspon Company had paid the money directly to respondent, and respondent had itself paid it over to the bank and taken treasurer's checks therefor.

Respondent cites and seems to rely on section 5575, Revised Statutes 1929, (Mo. St. Ann., sec. 5575, p. 7715). That section covers two classes of transactions, one where items are presented to the drawee or payor bank for payment, and the other where items are entrusted to an agent collecting bank for collection. The transaction involved here is obviously not within either class.

It follows that the respondent is not entitled to a preference.

The case of Stoller v. Coates, 88 Mo. 514, relied on by respondent, is so clearly distinguishable on its facts from the case at bar that a discussion of it could serve no useful purpose.

The Commissioner recommends that the judgment of the circuit court be reversed and that the cause be remanded to said court with directions to enter judgment in accordance with the views herein expressed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court.

· The judgment of the circuit court is accordingly reversed and the cause remanded to that court with directions as recommended by the Commissioner. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.

### ON MOTION FOR A REHEARING.

SUTTON, C.—Respondent, on motion for a rehearing, insists that the statement in the agreed statement of facts that the treasurer's checks were issued by the bank "for the purpose of transferring said sums" paid over to the bank by the Coal Company and the Greenspon Company, shows that our conclusion that respondent is not entitled to a preference is wrong. We are not persuaded, however, that this is so. The expression quoted and relied on must be construed in the light of the facts stated. Respondent says that the money paid over to the bank became a trust fund and that it remained a trust

fund notwithstanding the respondent purchased treasurer's checks with it. It is true that the money was turned over to the bank for respondent, and the respondent had a right to use the money as it saw fit. It could take the money if it wished, or it could take therefor treasurer's checks, as it did. If respondent itself had paid the money over to the bank and taken treasurer's checks therefor, no one would contend that a right to a preference would have arisen. What is the difference whether the money was paid over to the bank by the respondent itself or was paid over to the bank for respondent by others? The money was put in the bank for the respondent. It had a right to have the money delivered to if it so desired, or it could use the money to purchase treasurer's checks. It elected to take treasurer's checks instead of the money. Respondent's anomalous insistence is that it took treasurer's checks for the purpose of transferring to itself the money that was in the bank ready to be transferred to it over the bank counter. This is not a case in which the respondent paid its money into the bank and directed the bank to transfer it to a third party, or to use it for a designated purpose. This is just what the Coal Company and the Greenspon Company did, but after the money was paid over to the bank for respondent it applied the money to the purchase of treasurer's checks, when it could have had the money direct from the bank instead of the treasurer's checks. It is obvious that respondent elected to take credit, evidenced by the treasurer's checks, in lieu of the money, said treasurer's checks to be paid in due course as treasurer's checks are ordinarily paid, and so in such sense to transfer ''said sums'' to respondent.

Some of the suggestions made by respondent's learned counsel with respect to what the agreed statement of facts does not show indicates that counsel have overlooked the rule now firmly established that the burden is on him who seeks a preference against the assets of an insolvent bank to show that he is entitled to such preference and not on the finance commissioner to show the contrary. This means that the party seeking a preference must show facts entitling him to the preference, and not on the finance commissioner to show facts that would defeat the preference.

The Commissioner recommends that respondent's motion for a rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. Respondent's motion for a rehearing is accordingly overruled. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.