**J. S. HUDNALL, Appellant,**

v.

**TYLER BANK & TRUST COMPANY,**
**Appellee.**

**No. 455.**

Court of Civil Appeals of Texas.

Tyler.

Dec. 4, 1969.

Rehearing Denied Dec. 31, 1969.

Reeves & Reeves, William S. Reeves, Tyler, Ritchie, Ritchie & Crosland, J. W. Crosland, Dallas, for appellant.

Lawrence & Lawrence, F. Lee Lawrence, Tyler, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment. Appellee, Tyler Bank & Trust Company, hereinafter referred to as the "bank," instituted suit against appellant, J. S. Hudnall, seeking judgment on a promissory note dated February 9, 1967, in the principal sum and amount of $160,000.00, together with interest and attorney's fees. Appellant, J. S. Hudnall, answered with a general denial; a sworn plea of failure of consideration; and a cross-action for damages alleging that the bank had breached its agreement to place the proceeds of the aforesaid note in a special account and had breached its agreement to supervise the disbursement therefrom in accordance with said agreement.

In substance, appellant alleged in his answer that during the latter part of 1963 he learned, either through J. Harold Stringer, the president of the bank, or through John W. Hardin, president of Clanahan Construction Company, that Clanahan Construction Company had entered a bid for the construction of an addition to the Mother Frances Hospital in Tyler and that in order for it to be eligible for the issuance of a performance bond, the bonding company had required Clanahan to show financial responsibility in the sum and amount of $160,000.00. He further alleged that subsequent to this time, J. Harold Stringer, president of the bank, suggested that he guarantee the availability of the sum of $160,000.00 to be used by Clanahan Construction Company in completing the contract with Mother Frances Hospital; that Stringer suggested to him that he execute and deliver his unsecured promissory note in said sum to the bank, bearing interest at the rate of six per cent per annum, and that Clanahan Construction Company execute and deliver an unsecured promissory note in a like amount payable to the order of Hudnall, bearing interest at six per cent per annum, and payable at the same date as Hudnall's note to the bank; that Clanahan Construction Company pay the interest on both of said notes as the same became due and payable; and that Hudnall execute and deliver to Transamerica Insurance Company an agreement whereby Hudnall subordinated his right and claims against Clanahan Construction Company by reason of said note payable to him, to the claims, rights and demands of Transamerica Insurance Company, as surety, upon the performance bond of Clanahan Construction Company mentioned above. He alleged that after several conferences between him and the president of the bank, he agreed to such an arrangement and executed and delivered to the bank his promissory note on January 7, 1964, in the principal sum of $160,000.00, bearing interest at the rate of six per cent per annum, payable on "4–15–66 or on demand" provided and upon

the condition that the funds represented by his note payable to the bank should be held by the bank for the specific purpose and no other of providing funds to the extent of $160,000.00 to be used and made available to Clanahan Construction Company for the sole and only purpose of completing the construction contract between it and Mother Frances Hospital in the event, and only in the event, that Clanahan Construction Company could not complete said contract without using such funds or some portion thereof; that the bank agreed to accept this note and to advance the funds and expressly agreed to hold the funds represented thereby upon and subject to the conditions stated above and for the sole purpose theretofore alleged, or, in the alternative, that the bank accepted the note under the circumstances stated above and thereby impliedly consented and agreed to the said directions and conditions given and made by him; that the deposit of said note and the funds represented thereby with the bank thus constituted a deposit for a specific, special, limited and particular purpose. He further alleged that notwithstanding said agreement the bank, in furtherance of a planned design course of action and of a conspiracy with Clanahan Construction Company to secure funds to be used by Clanahan Construction Company to pay its debts to the bank, deposited the sum of $160,000.00 represented by Hudnall's note to the unrestricted, general checking account of Clanahan Construction Company, and thereby commingled said funds with the funds of Clanahan Construction Company, thus making said funds available for use by Clanahan Construction Company, which was not in accordance with the terms of the agreement. Thereafter, he alleged that Clanahan Construction Company drew checks on the account in excess of $100,000.00, payable to the bank, in payment of notes which it owed the bank. He further alleged that the contract between Clanahan and Mother Frances Hospital had been completed and that no portion of the funds made available for the limited purpose of guaranteeing the completion of the contract by Clanahan was used or required to be used in completing the contract; that because of such facts, he demanded the bank to cancel and deliver to him the promissory note, which he had theretofore executed, together with all renewals thereon, but that the bank refused and instituted this action to enforce payment of the note. His answer concluded with a prayer, praying that the bank take nothing by its suit and that the note be cancelled for failure of consideration, and alternatively, he prayed for damages in the sum and amount of $160,000.00 with interest thereon, from the date of the execution of the original note.

Appellee, Tyler Bank & Trust Company, filed its unsworn motion for summary judgment alleging that the pleadings, together with the depositions and exhibits, show that there is no genuine issue as to any material fact and that the bank was entitled to a judgment for full recovery upon its cause of action against appellee Hudnall as a matter of law.

Appellant, J. S. Hudnall, replied to the motion for summary judgment by filing an unsworn pleading alleging in substance that the pleadings, depositions and exhibits on file in the cause were sufficient to create disputed issues of material fact and prayed that the bank's motion for summary judgment be denied.

After a hearing upon the motion, the trial court entered a summary judgment in favor of the bank against appellant for the sum of $206,088.76, together with interest thereon from the date of the judgment at the rate of ten per cent per annum together with all costs of suit and further decreed that the appellant take nothing against the bank by reason of his cross-action. From this judgment, appellant has duly perfected his appeal.

By the first point of error, appellant contends that the trial court erred in granting a summary judgment because the proof fails to show that the bank was the present

owner and holder of the note in that neither the original note nor a sworn certified copy thereof was attached to any of the bank's pleadings, nor was there any deposition testimony showing the bank to be the present owner and holder of the note. Therefore, appellant contends that his general denial was sufficient to create a genuine issue of material fact as to whether the bank was the present owner and holder of the note, citing the holding in Alexander v. Houston Oil Field Material Company, 386 S.W.2d 540 (Tex.Civ.App., Tyler, 1965, writ ref., n. r. e.).

■ The record shows that the original note dated January 7, 1964, was renewed from time to time with the last renewal having been executed by appellant through his attorney-in-fact on February 9, 1967. A copy of the last renewal note was attached to the bank's unsworn original petition. While neither the motion for summary judgment nor the bank's pleadings alleging ownership of the note was sworn to, we do not believe the case relied upon by appellant is applicable under the facts presented here. The rule announced in that case applies only to a situation where the holder of a note attempts to prove ownership by unsworn pleadings, whereas in the present case, the holder of the note offered proof of ownership. In the deposition of J. S. Hudnall, made a part of the record, counsel for the bank produced the original renewal note dated February 9, 1967, and exhibited same to appellant whereupon appellant admitted that it was the original of the renewal note which was executed by his son with his authority. Thereupon, the note was offered in evidence without objection on the part of appellant. A photostatic copy of the note was attached to the deposition. The deposition was subsequently offered in evidence without objection upon the hearing on the motion for summary judgment. The note, of course, shows the bank to be the payee. Thus, the evidence shows, without dispute, that the bank was in possession of the original note sued upon both at the time of the deposition and time of trial.

■ Possession of a negotiable note raises a presumption of ownership. Thus, possession by the bank coupled with the fact that the bank introduced the same in evidence was prima facie evidence of the fact that the bank was the present owner and holder of the note, particularly in view of the fact that appellee was named as payee. Daugherty v. Eastburn, 74 Tex. 68, 11 S.W. 1053; Felton v. Davenport, 148 S.W.2d 988 (Tex.Civ.App.); Dickson v. Dickson, 324 S.W.2d 422 (Tex.Civ.App., Houston, 1959); McCormick & Ray, 2nd Ed., Evidence, Sec. 110, par. (2).

■ Appellant argues, however, that ownership at the time of the deposition and at the time of the hearing on the motion for summary judgment does not necessarily prove ownership at the time of the entry of the judgment several months later. The answer to this is that where a state of things is proved to have existed at a particular time, its continuance is presumed until the contrary is shown. This presumption has been applied to a great variety of subjects, including ownership. McCormick & Ray, Evidence, 2nd Ed., Sec. 81. We find nothing in the record showing to the contrary. Appellant's first point is overruled.

By the second, third and fourth points, appellant contends that the summary judgment was improvidently granted because the pleadings and evidence show disputed fact issues were raised with respect to his defense of failure of consideration and his cross-action for breach of contract in that there was a dispute upon the basic issue of whether or not the bank agreed to deposit the funds to a special account and further agreed to allow a withdrawal thereof only on the condition that Clanahan needed the funds to complete the construction contract. In response, the bank argues that summary judgment evidence fails to show such an agreement. The bank says

that appellant, by his own testimony, refuted such an agreement when he admitted that he did not instruct the bank to place the funds in a special account but specifically instructed the bank to place the funds in Clanahan Construction Company's general account.

Since this is an appeal from an order sustaining a motion for summary judgment pursuant to Rule 166–A, Vernon's Texas Rules of Civil Procedure, the sole question is whether a genuine issue of material fact is presented by the pleadings, affidavits and other documents presented to the trial court. The burden of demonstrating that no genuine issue as to any material fact exists rests upon the party filing the motion for summary judgment. In determining the question of whether a genuine issue of material fact is presented, we must view the record in a light most favorable to the party opposing the motion and accept as true the evidence which tends to support its position. Rule 166–A, Vernon's Texas Rules of Civil Procedure; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929; Manney & Company v. Texas Reserve Life Insurance Company, 407 S.W. 2d 345 (Tex.Civ.App., Dallas, 1966, no writ history); Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, Tex., 391 S.W.2d 41, 47; White v. Lakewood Bank and Trust Company, 438 S.W.2d 129, 131 (Tex.Civ.App., Dallas, 1969, n. w. h.).

While the pleadings, depositions and other documentary evidence filed by the bank were no doubt sufficient to establish a cause of action upon the note thus entitling it to a summary judgment as a matter of law, yet we recognize that a summary judgment would not be proper unless other summary judgment evidence shows that there is no disputed issues of fact upon the defensive issues and the cross-action asserted by appellant.

The cause appears to have been fully developed by deposition and other documentary evidence. The record shows that at the time of the execution of the note in question, appellant was, and had been for many years, a member of the Board of Directors of the bank and had served in other official capacities with the bank. It also shows that appellant knew that Clanahan was a customer of the bank and carried its account there. It further shows that on two previous occasions, appellant had entered into similar arrangements with Clanahan Construction Company in which Clanahan agreed to pay appellant the sum of $10,000.00 or ten per cent of the net profit on the contract or on the construction contracts for and in consideration of his assistance in securing performance bonds.

In describing his arrangement with the bank in the present case, appellant testified in his deposition as follows:

"Q. Would you describe the events that took place between you and Mr. Hardin and the Bank on that occasion?

"A. Yes, when I got there, as I say, I did not see Mr. Hardin, and I went directly into Mr. Stringer's office and when I got in the office, I started discussing this deal again with Mr. Stringer. And I again went over the fact that any money that I put up with reference to this deal would have to be limited to the guaranteeing of the completion of the hospital and that alone—even mentioned the fact that I could not, of course, guarantee Mr. Hardin to make any profit. And when I made this agreement, this oral agreement with Mr. Stringer, and I said, 'You understand that this is the way that the deal has to be made?' He says, 'Yes.' I then executed this Note which he had made out or which he made out during the course of our conversation, and handed it to me, and I signed it. About the time that the Note was signed, Mr. Hardin came in. It could have been a half minute before it was signed. It could have been a minute after. I couldn't pin it down that close, because I had no reason to try to do it. And when

Mr. Hardin came in, why he had—he either made out right at that time, the note of $160,000.00 payable to me on demand and carrying the same terms as the Note which I had just executed to the Bank. And then Mr. Stringer says, 'Now, do you want me to put this money in Mr. Hardin's account?' And I said, 'Yes.' Of course, assuming that he could carry out the oral agreement which we had had just three minutes before, that the money would be restricted to the guaranteeing of the completion of the Mother Frances Hospital. And Mr. Hardin gave me his Note and Mr. Stringer already had my note, and the deal was closed out and that was all there was to it.

"Q. Was that all that was said?

"A. That's all that was said that I have any memory of.

"Q. Do you remember whether or not Mr. Stringer asked you if you wanted it in any kind of a special account?

"A. No, he did not.

"Q. Did not ask you that?

"A. No, he didn't mention that. He asked me if I wanted it to go into their account, and I said, 'Yes', and that was all that was said with reference to accounts.

"Q. By accounts, you said put it in—

"A. Clanahan Construction Company's.

"Q. All right, you said John Hardin's account, you meant Clanahan Construction Company account.

"A. Clanahan Construction Company's account.

"Q. Now, who asked you about that?

"A. Mr. Stringer. And he put it in there. I didn't.

"Q. Well, upon whose authority did he put the $160,000.00 in the Clanahan Construction Company account?

"A. Well, I had authorized him to.

"Q. So it was upon your authority?

"A. I would assume so.

\*    \*    \*    \*    \*    \*

"Q. Didn't you direct Mr. Stringer to put in in John's account?

"A. Yes.

"Q. But you didn't say in a special account?

"A. No.

"Q. Did you have any agreement with Mr. Stringer or the Bank that it was to go into a special account?

"A. No.

\*    \*    \*    \*    \*    \*

"Q. What did you mean by the guaranteeing of the completion of the hospital?

"A. The money was to be used in case Mr. Hardin or the Clanahan Construction Company had to have it to finish up if they did get into a tight, a financial tight, and could not finish it, that the money would be available to them."

The bank does not dispute the fact that it made no attempt to exercise control over the account, nor does it dispute the fact that Clanahan used a portion of the funds to discharge its obligations to the bank. According to the deposition testimony of Harold Stringer, it was not until some time later that the bank learned Clanahan had used some of the funds to repay its obligations to the bank. The bank denies the existence of any conspiracy to defraud appellant. The deposition testimony of Clanahan also denies any conspiracy to defraud. According to Clanahan, the reason for discharging its obligations to the bank at that particular time was due to the fact that it had a large amount of accounts receivable due to be collected shortly thereafter and its purpose was to avoid having to pay interest.

Although the evidence shows that Clanahan completed the construction contract,

it is without dispute that Clanahan failed to pay the note executed to appellant in the amount of $160,000.00. The record also shows Clanahan lost approximately $180,-000.00 on the construction job and that at the time suit was filed, Clanahan's account at the bank was practically depleted.

As we analyze the record, the only evidence giving rise to a contractual relationship is to be found in the above quoted testimony of appellant. It is without dispute the bank contracted to loan appellant the sum of $160,000.00 for and in consideration of his agreeing to repay the same with interest. Subsequent to the first contract, a question arose upon a second contract. That is, how and where the money was to be deposited. Appellant contends that he offered to deposit the funds with the bank upon the condition that same would be placed in a special account to be withdrawn only upon the condition that Clanahan used the funds to complete the construction contract and that the bank accepted his offer and agreed to become his agent in the disbursement of the funds.

Therefore, we are confronted with the question of whether or not there is any evidence of probative force showing that the parties agreed that the funds were to be deposited in a special account as distinguished from a general account.

It now seems to be well settled that where the depositor and the bank agree at the time the deposit is made that the money is to be used for some specific purpose, and for that alone, the relationship of the bank and the depositor is that of principal and agent, and if the bank fails to apply the money as agreed or misapplies it, it can be recovered as a trust deposit. City State Bank v. National Bank of Commerce, 261 S.W.2d 749 (Tex.Civ.App., Forth Worth, 1953, err. ref., n. r. e.).

But where funds are deposited in a bank without any agreement, the deposit is known as a general deposit. In this instance, the funds become the property of the bank to use and disburse as it sees fit and the relationship of the bank and the depositor becomes that of debtor and creditor. 10 Am.Jur.2d, Sec. 339, p. 301.

A depositor may direct how the funds shall be appropriated, and if the bank does not refuse a deposit made under the conditions stipulated, its consent thereto may be implied. 10 Am.Jur.2d, Bank, Sec. 342, page 306; First State Bank & Trust Co. v. First Bank of Truscott, 32 S.W.2d 494 (Tex.Civ.App., Eastland, 1930); City State Bank v. National Bank of Commerce, supra.

The character of a deposit as general or special is generally determined by the contract, either expressed or implied, made between the bank and the depositor, as evidenced by what was said and done when the transaction took place. 10 Am.Jur.2d, Bank, Sec. 363, page 323; 86 A.L.R. 375.

Where money is deposited in a bank in the account of a third person and the depositor intends to require the particular deposit to be kept separate from all other deposits to the credit of a third person depositor, it must be in the shape of a plain direction to impose such a duty on the bank. 10 Am.Jur.2d, Bank, Sec. 363, page 323; Bassett v. City Bank & Trust Company, 115 Conn. 1, 160 A. 60, 81 A.L.R. 1488.

In the absence of an agreement to the contrary, a deposit is presumed to be general rather than special, and the burden devolves on the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact. 10 Am. Jur.2d, Sec. 363, page 324, citing cases.

While we have concluded that the alleged agreement as outlined by appellant's testimony was not accompanied by such certainty and mutuality of assent as to rise to the dignity of a contract for a special deposit, we do not deem it necessary to rest our decision on that basis alone. Even

though it be assumed that the agreement was sufficient, we are nevertheless of the opinion that the evidence conclusively shows that immediately thereafter the parties rescinded the agreement by mutual consent. The evidence shows, without dispute, that appellant instructed Stringer to place the funds in the general account of Clanahan Construction Company, which he did. The funds in that account were therefore funds belonging to the bank. Consequently, when appellant instructed Stringer to deposit the funds in Clanahan's account, he, in effect, gave the bank the right to commingle the funds with funds owned by the bank in Clanahan's account in which only a debtor-creditor relationship existed.

The rule seems to be that where a depositor gives the bank the right to commingle the deposit with other funds owned by the bank, the deposit does not create a special deposit giving rise to a bailor-bailee relationship, but is a general deposit creating a debtor-creditor relationship thereby authorizing the bank to use and disburse the funds as it sees fit. Security Nat. Bank Savings & Trust Co. v. Moberly, 340 Mo. 95, 101 S.W.2d 33.

While appellant may have assumed that the bank would do what was necessary to protect his interest, appellant frankly admits that he told Stringer to place the funds in Clanahan's general account. In agreeing to follow such instruction, Stringer accepted his offer. Thus, if a bailee or trustee relationship ever existed, the undisputed evidence shows it was rescinded.

Generally speaking, parties who are competent to enter into an initial contract may enter into a subsequent agreement to rescind the initial contract. Cates v. Continental Casualty Co., 366 S.W.2d 126 (Tex.Civ.App., Dallas, 1963, no writ history).; 17A C.J.S. Contracts § 387, p. 459. The consent of the parties to the recission may be implied from the circumstances and from their dealings with the subject matter, and need not be shown by express agreement. Marsh v. Orville Carr Associates,

Inc., 433 S.W.2d 928 (Tex.Civ.App., San Antonio, 1968, ref., n. r. e.). Consequently, since the funds in question were general funds, the bank cannot be held responsible for having paid out same upon checks presented by the duly authorized officer of the construction company. Klachko v. Lawyers Trust Co., 170 Misc. 134, 9 N.Y.S.2d 309, aff'd., 256 App.Div. 1060, 12 N.Y.S.2d 782.

As we view the record, appellant's proof fails to raise any issue of disputed fact on his defense of failure of consideration or on his cross-action for breach of contract. Consequently, we believe the action of the trial court in entering a summary judgment was proper.

The judgment of the trial court is affirmed.

McKAY, J., not participating.