CITY OF FULTON v. HOME TRUST COMPANY, D. R. HARRISON, Commissioner of Finance and W. B. WHITLOW, Deputy Commissioner of Finance, in charge of the assets of the HOME TRUST COMPANY OF FULTON, Appellants.—78 S. W. (2d) 445.

Division One, December 21, 1934.

*W. B. Whitlow* for appellants.

241

*Rubey M. Hulen, Edwin C. Orr* and *Clyde Boyd* for respondent.

FERGUSON, C.—On December 29, 1931, the Home Trust Company of Fulton ceased to do business and its "affairs and assets" were placed under the control of the State Commissioner of Finance for liquidation. [Sec. 5316, R. S. 1929.] At the time the city collector of the city of Fulton had the sum of $5,511.08 on deposit in said trust company to his credit as city collector. Said sum was the aggregate of city funds collected by him and deposited, from time to time, with the trust company, to his credit as city collector, during the month of December. The city of Fulton seeks to have its claim for said sum of $5,511.08 granted preference. Upon a hearing in the Circuit Court of Callaway County the claim was classified, and ordered paid, as a preferred claim. The appeal from the judgment of the circuit court went to the Kansas City Court of Appeals. That court held that the city was not entitled to a preference and reversed the judgment and remanded the cause with directions to the trial court to allow the city's claim as a common claim only. [In re Home Trust Company of Fulton (City of Fulton v. Harrison, Commissioner of Finance) (Mo. App.), 69 S. W. (2d) 312.] However, one of the judges of the Court of Appeals deeming the decision of that court to be contrary to a previous decision of this court the cause was certified and transferred here. We must therefore determine "the cause or proceeding as in case of jurisdiction obtained

by ordinary appellate process.'' [Section 6, Amendment 1884, Article 6, Constitution of Missouri.]

Fulton is a city of the third class. On April 1, 1930, R. L. Brown was elected city collector of said city for a term of two years and thereupon duly qualified by executing and filing a bond for $20,000, as required by ordinance, with the American Surety Company of New York as surety thereon, which bond was accepted and approved by the city council. The bond, in conformity with the ordinance, was conditioned that the said ''R. L. Brown shall faithfully and punctually collect and pay over all city revenue, and faithfully do and perform the acts and duties required of him by virtue of said office'' of city collector, etc. Brown was thus the duly elected and qualified city collector throughout the year 1931. During the same period T. H. Van Sant was city treasurer and the Callaway Bank the legally designated and acting city depository. It was admitted; ''that at the time of the closing of the Home Trust Company there was on deposit in said trust company the sum of $5511.08 to the credit of R. L. Brown, city collector; that no part of said sum has been paid; that, at the time of closing, said trust company had sufficient assets on hand out of which the claim could be paid and that said assets are in the custody of the Special Deputy Commissioner of Finance; and that claim'' therefor ''was filed in due time.'' The fund in controversy, $5,511.08, is the aggregate of twenty-two daily deposits, in various amounts, made by Brown, from and including December 2, to and including December 28, 1931, to his credit as city collector in the Home Trust Company of Fulton. The trust company closed and placed its ''affairs and assets'' under the control of the State Commissioner of Finance, for liquidation, on the morning of December 29, 1931. These funds, so deposited, represented city taxes and other city revenues which Brown, in his capacity as city collector, had collected during the month of December. He did not, at any time, deposit any personal or private funds in this account but only funds of the city.

Sections 6782 and 6785, of Article 4, Chapter 38, Revised Statutes 1929, relating to cities of the third class, declare the duties of city collector in reference to paying into the city treasury all city revenues collected or received by him from all sources. Said sections read; Section 6782: ''The city collector shall report to the city council, at the regular meetings in each month, all taxes collected on the real and personal delinquent lists; and he shall pay the same to the city treasurer, and receive credit therefor.'' Section 6785: ''It shall be the duty of the city collector to pay into the treasury, monthly, all moneys received by him from all sources, which may be levied by law or ordinance; also, all licenses of every description authorized by law to be collected, and all moneys belonging to the city which may come

into his hands. He shall give such bond and perform such duties as may be required of him by ordinance.'' In this connection we quote the following excerpts from the ordinance of the city of Fulton relating to the duties and requirements of the city collector: ''It shall be the duty of the collector, at the close of business on the last week day of each month to make with the city clerk a full and complete settlement of the revenue collected by him, from all sources whatever, during the preceding month. In such settlement the collector shall show from what source each amount of revenue is received and has been collected,'' etc. ''Immediately after each monthly settlement, as aforesaid, the collector shall pay into the city treasury the amount found due on such settlement, he shall take two receipts from the treasurer for the amount so paid in, one of which he shall file with the city clerk, who shall charge the treasurer with the amount such payment and credit the collector with the same.'' The ordinance further requires, that ''within fifteen days after his election and before entering upon the discharge of the duties of his office, the collector shall execute to the city of Fulton a bond in the sum of twenty thousand dollars . . . conditioned that he will faithfully and punctually collect and pay over all city revenue for the two years next ensuing his election, and during his term of office, at the time and in the manner provided by the laws and ordinances governing the city of Fulton,'' etc.

Brown made daily deposits in the bank, to his credit as city collector, of the city revenues collected or received by him as city collector. Pursuant to the provisions of the ordinance, at the end of each month, or between the first and third of the following month, he regularly delivered, to the city treasurer, his check drawn upon the bank of deposit in the full or aggregate amount to his credit, took the duplicate receipts therefor from the city treasurer and then filed his monthly report or settlement with the city clerk for presentation to the city council, accompanied by the treasurer's receipt. He regularly followed this course, transferring or paying over to the city treasurer at the end of each month all city funds which he had collected during the preceding month and apparently his predecessors in the office of city collector had uniformly followed a like course. The trust company having closed on the 29th day of December his collections for the month of December to his credit, in that bank, as city collector, had not yet been transferred to the city treasurer. The officers of the trust company knew the funds deposited by Brown to his account as city collector were city funds and that he had transferred, and intended to transfer, the total amount of that account at the end of each month, by check, to the city treasurer who would then deposit same in the city depository, the Callaway Bank. There was no agreement or understanding between Brown and the officers of

the trust company that such deposits should be accepted, held or handled by the trust company in any way or manner different from that of an ordinary deposit and they were made in the form of, and received and treated by the trust company as, ordinary deposits.

No statute by virtue of which the city is specifically or expressly given a preference as to these deposits is relied upon and, if the city's claim to preference is to be sustained, it must appear that the bank's relationship to the deposits was fiduciary, that is, that the bank received and held these deposits impressed with a trust; therefore the city advances two theories; first, that the city collector was not the legal custodian of such funds; that the deposits were made without authority, were illegal or unlawful, and known by the officers of the bank to be so, and that thus a trust *ex maleficio* was created; second, that, if they be held to have been lawful deposits, under the facts they were received as, became and were, special deposits which the bank held as a mere trustee.

██ The sections of our statute relating to the duties of a city collector of cities of the third class and the ordinance of the city of Fulton defining same, above cited and quoted, clearly contemplate that the city collector retain city moneys and revenues, which he collects, in his custody, during the interim between the monthly settlements therein provided for and required. Neither by statute or ordinance is he required, upon making a collection of city taxes or other city revenues, to forthwith pay over or transfer each individual item to the city treasurer and take a receipt therefor but he is authorized and permitted, if not in fact directed, to retain the various sums so collected during the month until the end of the month at which time he is required to make his monthly settlement and pay over to the city treasurer the total amount of such collections made during the month and take receipts therefor one of which he files with the city clerk. Clearly during such period he is the lawful custodian of such funds. Neither statute nor ordinance directs how or in what manner he shall hold or preserve the funds while same are in his custody. He is responsible for their safe keeping and under a bond conditioned that he will pay them over to the city treasurer monthly as required by statute and ordinance. The fund in controversy, being the total, as stated, of numerous daily collections made by Brown as city collector during the month was therefore being lawfully held and retained by him as city collector. Even if it were material no contention is advanced, or suggestion made, that at the time he made these deposits the reputation of the bank for solvency was questioned or impaired or that he had any knowledge or information to that effect. He was the legal custodian of these funds and certainly was authorized and warranted in depositing them, from time to time during the month, as received, in a bank for safe-keeping,

if he chose to do so, and his act in so doing was not in violation or contravention of any statute or ordinance. It was not therefore an illegal or unlawful deposit giving rise to a trust *ex maleficio*. [In re Bank of Mt. Moriah, 226 Mo. App. 1230, 49 S. W. (2d) 275; In re Hunter's Bank of New Madrid, 224 Mo. App. 550, 30 S. W. (2d) 782; City of Aurora v. Bank of Aurora, 227 Mo. App. 343, 52 S. W. (2d) 496.] As said in the Court of Appeals' opinion, "This case is not at all like the case of State ex rel. Gentry, Attorney-General, v. Page Bank of St. Louis, 322 Mo. 29, 14 S. W. (2d) 597," cited by the respondent city. In that case the Secretary of State instead of promptly transmitting automobile registration and license fees, collected through his office, to the State Treasurer as required by the plain provisions of the statute retained such fees, at least temporarily or for a time, and deposited them in the bank to his credit as Secretary of State. It was held that "such deposits were made against the admonition of the law and were illegal," which was known to the bank, and therefore the bank held such deposits as a trustee *ex maleficio*. The city also cites City of Maryville v. Farmers Trust Company of Maryville, 226 Mo. App. 641, 45 S. W. (2d) 103, but the difference in facts distinguishes that case. The city collector of the city of Maryville collected $2500 which belonged to the "water fund" of that city. He did not pay it over to the city treasurer but placed the full amount thereof on time deposit with the trust company receiving therefor a time certificate of deposit by which the trust company promised to pay the city said sum six months after date with interest at the rate of four per cent per annum. The collector retained "complete control" of the deposit and regularly renewed the time certificate over a period of several years, the last renewal thereof being December 10, 1929. Shortly thereafter the bank was closed and its affairs placed in the hands of the Commissioner of Finance for liquidation. The city was granted a preference. The gist of the opinion, as the writer understands it, is that the city collector exceeded his authority in indefinitely retaining the fund in his custody and under his control and in placing it on deposit in the manner in which he did. Citing Section 6785, supra, the Court of Appeals said: "It was the duty of the city collector 'to pay into the treasury, monthly, all moneys . . . belonging to the city which may come into his hands.' . . . That duty he did not perform. On the contrary, he adopted a course which rendered the performance of that duty impossible. He turned the money over to the trust company and accepted its written obligation to repay . . . The deposit, if such it may be called, had all the essential features of a loan, was unlawful, and the trust company therefore did not acquire title thereto" and that the act of the city collector "was in plain violation of an express statute." Also by reference to City of Macon v.

Farmers Trust Company (Mo. App.), 21 S. W. (2d) 643, cited by respondent city, we think it will readily appear that the decision in that case does not support respondent's contention. It was, in brief, there held that the deposit of city funds made by the city clerk to his credit as city clerk was an unlawful deposit; that the city clerk was not the legal custodian thereof, had no right to the custody thereof and that his deposit of such funds to his credit was unauthorized, with all of which the trust company was chargeable with notice, and that the trust company "therefore became a trustee *ex maleficio.*"

Respondent says that the city collector was a trustee with respect to the city moneys which he collected and deposited with the trust company and makes the argument that since the officers of the trust company knew that the city was the beneficial owner of the moneys so deposited to the credit of the city collector and that the city collector retained and had custody thereof as a trustee that it necessarily follows that when same were deposited with the trust company it thereupon also became a trustee as to such funds. If that theory be adopted and followed the deposit of trust funds of any kind in a bank having knowledge of their source and character would make the bank a trustee thereof and entitle the beneficial owner to a preference but such is not the rule in this State. In Paul v. Draper, 158 Mo. 197, 59 S. W. 77, this court said: "The fact that the deposit was of a trust fund, and known to the bank to be such, would not of itself make the bank a trustee of the fund for the benefit of the *cestui que trust.*" We think the following excerpt from the opinion of the St. Louis Court of Appeals in Wheelock v. Cantley, State Commissioner of Finance, 227 Mo. App. 102, 50 S. W. (2d) 731, disposing of a like contention, made in that case, states the correct rule: "In this State the rule is that deposits made by trustees are usually considered simply as general deposits, and if the bank fails to pay them, the beneficiaries have no particular claims or rights over other creditors, but share the same as other creditors (William R. Compton Co. et al. v. Farmers' Trust Co., 220 Mo. App. 1081, 279 S. W. 746, l. c. 748), and that is true even when the deposit is a public fund made by an official charged with its custody, such deposit in the absence of statute, stands upon the same plane as other general deposits and a claim therefor is not entitled to preference. [Special Road Dist. v. Cantley, 223 Mo. App. 89, 8 S. W. (2d) 944, l. c. 945; In re North Missouri Trust Co. (Mo. App.), 39 S. W. (2d) 415, 417.]" [See, also, City of Aurora v. Bank of Aurora, supra; Round Prairie Bank of Fillmore v. Downey (Mo. App.), 64 S. W. (2d) 701; and, Parker v. Central Trust Co. of St. Charles (Mo. App.), 71 S. W. (2d) 106.] We call attention to the statement found at 7 Corpus Juris, page 633, that the prevailing view is that "deposits

made by trustees, executors, administrators, assignees, agents, public officers, and other persons who are serving as fiduciaries are usually considered as simply general deposits, and if the bank fails to pay them, the beneficiaries have no peculiar claims or rights over other creditors, but must share like other creditors.''

Respondent's final contention is that if the deposits were legal and lawful and if the character of the funds did not make the trust company a trustee thereof nevertheless the transactions constituted, at least, special deposits which the trust company received and held in trust as such. As pointed out in our statement of the facts no agreement or understanding of any kind whatsoever between the city collector and the trust company concerning these deposits was shown. The deposits were not made subject to any conditions or reservations and the bank assumed no special or unusual obligation or undertaking in reference thereto whereby it became a mere trustee or bailee. Apparently the collector placed the money on deposit, and it was received by the trust company, as an ordinary or general deposit, whereupon the deposits, so made, became a part of the general funds or assets of the bank and the relation of debtor and creditor, as between the trust company and the depositor, was created. A special deposit of money in a bank usually consists of the delivery thereof to the bank under or pursuant to an agreement or arrangement between the depositor and the bank whereby the bank undertakes to hold same for a prescribed purpose, assuming the relation of a mere trustee or bailee thereof, and to return the same money or its equivalent to the depositor, or to a designated third person, upon the happening of the event agreed upon. A discussion of special deposits, what constitutes same and distinguishes them from general deposits will be found by reference to the following Missouri decisions: Paul v. Draper, supra; Wheelock v. Cantley, State Commissioner of Finance, supra; Fred A. Boswell Post of the American Legion v. Farmers State Bank of Mt. Vernon (Mo. App.), 61 S. W. (2d) 761; In re North Missouri Trust Company of Mexico, supra; Ellington v. Cantley, Commissioner of Finance (Mo. App.), 300 S. W. 529; Nichols v. Bank of Syracuse, 220 Mo. App. 1019, 278 S. W. 793; Craig, Trustee, v. Bank of Granby, 210 Mo. App. 334, 238 S. W. 507; and Butcher v. Butler, 134 Mo. App. 61, 114 S. W. 564. The contention concerning special deposits, as well as the other points involved in this case, will be found well reasoned and, we think, correctly ruled in the majority opinion of the Court of Appeals in this case, cited supra. Our conclusion is that the facts of the transaction do not characterize the deposits as special but that on the contrary they were made, and received by the bank, as general deposits and ''the bank simply became indebted to'' Brown ''in his official capacity

and he took the risk of being able to collect it when he required it." [Paul v. Draper, supra.]

We find no conflict in the view we take of this case, which concurs with that of the majority opinion of the Court of Appeals, and In re Mt. Vernon Bank, 334 Mo. 549, 66 S. W. (2d) 850, with which it was thought the majority opinion of the Court of Appeals might be in conflict. The Mt. Vernon case dealt with a preference granted by statute and discussed, construed and applied the statute under the particular facts of that case.

The judgment is reversed and the cause remanded with directions to the trial court to allow the claim as a common claim. *Sturgis* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.