In the Matter of the Liquidation of The Sturdivant Bank, Cape Girardeau, Mo.; International Shoe Company of St. Louis, Mo., Respondent, v. The Sturdivant Bank, a Corporation, and O. H. Moberly, Commissioner of Finance of the State of Missouri, in Charge, Appellants.—89 S. W. (2d) 89.

St. Louis Court of Appeals. Opinion filed January 7, 1936.

*R. F. Baynes* for appellants.

*Richard O. Rumer* for respondent.

McCULLEN, J.—This action was brought by the respondent, the International Shoe Company, plaintiff below, to have its claim against the defunct Sturdivant Bank declared a preferred claim. The bank named was taken over by the Commissioner of Finance of Missouri on November 7, 1932. The Commissioner of Finance allowed the claim as a general claim, after which, in due time, it was certified and presented to the Circuit Court of Cape Girardeau County where it was allowed as a preferred claim. The defendants bring the case to this court by appeal.

With commendable frankness counsel for defendants state that the sole question for determination by this court is whether under the facts plaintiff's account in the Sturdivant Bank was a special deposit justifying the Circuit Court's action in allowing the preference.

It appears from the evidence that about August 1, 1932, plaintiff opened an account with the Sturdivant Bank, and at that time advised the bank that the account thus opened was for payroll purposes only and that withdrawals would be for payroll only. The records

of the bank show that the account was carried as "International Shoe Co. Payroll," and that plaintiff had no other account with the bank. The evidence shows that plaintiff paid its employees in drafts on or about the fifth and twentieth of each month, the payrolls being figured by plaintiff as of the fifteenth and thirtieth or thirty-first of each month, the difference in time between the end of each payroll period and the date of paying the employees being used for the purpose of figuring the payroll to "find out what it amounted to," according to Henry A. Murphy, plaintiff's cashier.

Cash receipts of plaintiff's cafeteria were from time to time deposited in the payroll account. These receipts represented a very small portion of the payroll account. When the payroll for a particular period had been figured, each employee of plaintiff was given a draft drawn on plaintiff for the amount of his wages, payable at the Sturdivant Bank, and plaintiff would at that time deliver to the Sturdivant Bank a draft drawn on plaintiff's St. Louis office for the amount which, added to the deposits from plaintiff's cafeteria receipts, would be equal to the amount of the payroll for that particular period. In other words, as stated by Mr. Murphy, plaintiff's cashier, "the cash receipts and the amount of the draft made up our payroll." Mr. Murphy testified that the process above described was carried on from August 1, 1932, up to November 5, 1932, the date on which the Sturdivant Bank was closed.

Withdrawals from the payroll account in the Sturdivant Bank were made at the end of each day in a sum representing the amount of drafts payable to plaintiff's individual employees, which were cashed by the bank each day. At the close of banking hours the bank would advise plaintiff as to the number and amount of these employees' drafts cashed on that particular day, and plaintiff would then issue a check to the bank against the payroll account for the total amount of such drafts. Plaintiff would then take such drafts to its office. Plaintiff did not give its employees checks.

The evidence shows that plaintiff's account at the bank was never used for anything except for payroll; that there never was at any time any amount deposited in the payroll account in excess of the amount required for the payroll for a particular period; that there were no checks drawn against the account at any time from its inception to the time the bank was closed for other than payroll purposes. No balance ever remained in the account except for such an amount as would cover payroll drafts which had been previously issued to plaintiff's employees in addition to deposits from plaintiff's cafeteria receipts made for the sole purpose of building up the payroll fund for the next payroll.

William N. Sitton, Assistant Treasurer of plaintiff company, testified that the method of paying plaintiff's employees by drafts was

begun about August 1, 1932. A letter written by Mr. Sitton on behalf of plaintiff to the Sturdivant Bank, dated September 6, 1932, was read in evidence and showed that it was in confirmation of the arrangement theretofore made between plaintiff and the Sturdivant Bank for the handling of plaintiff's payroll drafts by that bank. The letter described the method of handling the drafts mentioned, the daily accounting to be had between plaintiff and the Sturdivant Bank, the delivery by plaintiff to the Sturdivant Bank of plaintiff's check to cover the amount of said drafts each day, the agreement by plaintiff to hold the bank harmless and to reimburse the bank under certain contingencies in connection with the payment by the bank of such drafts, and the details of the entire plan for the bank's handling of plaintiff's payroll account. The letter was signed by Mr. Sitton as Assistant Treasurer for plaintiff, and also showed thereon that it was accepted by the bank on the 13th of September, 1932, by N. G. Bender, the bank's cashier.

It appears from the evidence that on November 3, 1932, plaintiff issued and delivered to the Sturdivant Bank plantiff's draft drawn on its St. Louis office in the sum of $28,141.79, the amount necessary for its payroll for November 1, 1932. The above mentioned draft was delivered by the Sturdivant Bank to the First National Bank of Cape Girardeau with the request that the last named bank procure cash thereon for the Sturdivant Bank. The evidence shows that the First National Bank of Cape Girardeau opened an account on its books with the Sturdivant Bank and from this account in the First National Bank of Cape Girardeau the Sturdivant Bank withdrew on November 4th and November 5, 1932, a total of $23,062.64, which left a balance in this account in the First National Bank of Cape Girardeau of $4,079.15 at the time the Sturdivant Bank closed on November 5, 1932. The above balance of $4,079.15 in the First National Bank of Cape Girardeau was afterwards withdrawn by the Deputy Commissioner of Finance in charge of the Sturdivant Bank.

The evidence further shows that at the close of business on November 5, 1932, the Sturdivant Bank requested the First National Bank of Cape Girardeau to set up the above mentioned balance of $4,079.15 in a special account for plaintiff and advised the First National Bank of Cape Girardeau that said balance was in the nature of a trust fund. November 5, 1932, was the last day that the Sturdivant Bank did business. The books of the Sturdivant Bank showed that at the time the bank was closed there was a balance in plaintiff's payroll account of $14,699.58; that deposits from cafeteria receipts, following the last payroll period, had been made on November 3rd and November 4, 1932, totaling $88.71, and that payroll drafts payable to employees outstanding at the time of the closing of the Sturdivant Bank amounted to $14,610.87, these drafts having been issued

by plaintiff to its employees on November 5, 1932. The difference of eight cents in the above mentioned figures was represented by check tax charges.

There is no dispute as to the balance in the account in the Sturdivant Bank at the time that bank closed. It also appears without dispute that the balance of $4,079.15, which was in the hands of the First National Bank of Cape Girardeau at the time the Sturdivant Bank closed, was plaintiff's money and was not mingled with any other funds in that bank. .

It was stipulated and agreed by the parties that at the time the Sturdivant Bank closed and at all times after the last deposit was made by plaintiff, there was an amount on hand in the bank in excess . of the amount due and owing on this account.

The judgment of the Circuit Court was that,

"Claimant have and recover the $4,079.15 which was on hand in the First National Bank to the credit of the Sturdivant Bank at the time of closing of the Sturdivant Bank which the Court finds claimant lawfully entitled to; in addition to which, balance of claimants claim $10,620.43, less $88.71 in claimant's Cafeteria Account, or the net sum of $10,531.72, is allowed as a preferred claim herein; the total of claims to which preference is given as herein set forth, being $14,-610.87.''

It will be noted that the total amount claimed by plaintiff in this cause is $14,610.87, which, on the face of the record, without explanation, would seem to be beyond the jurisdiction of this court. The jurisdiction of this court is not questioned by either party. However, we think it will not be amiss for us to say that our Supreme Court has held that in a case of this character the amount *in dispute* is the difference between the value of the claim as a preferred claim and its value as a common claim. Inasmuch as such amount *in dispute* herein does not appear affirmatively and is not determinable from the record, jurisdiction of the appeal in this cause is vested in this court. [Consolidated School Dist. No. 2. v. Gower Bank (Mo. Sup.), 53 S. W. (2d) 280; City of Doniphan v. Cantley, 330 Mo. 639, 50 S. W. (2d) 658.]

We are of the opinion that the account of plaintiff in the Sturdivant Bank was clearly a special deposit and not a general one. It was made by plaintiff for the sole and specific purpose of handling its payroll in the payment of the wages of its employees. This was not only known to the Sturdivant Bank, but was agreed to by the bank and the plan was carried out by the bank and the plaintiff in accordance with their agreement. The deposits made by plaintiff in the account mentioned were for the specifically limited purpose of meeting its payroll obligations. Plaintiff had no other account with the bank. Plaintiff issued no checks against the account at any time

for any other purpose except payroll purposes. At the time the bank was closed, the balance remaining in plaintiff's account therein represented payroll drafts theretofore issued by plaintiff to its employees in payment of their wages. These drafts were outstanding at the time the Sturdivant Bank was closed.

There was nothing in the evidence from which an inference could arise that the bank had title to the funds in this payroll account of plaintiff. Under the arrangement with plaintiff, the Sturdivant Bank certainly could not have used the funds in plaintiff's payroll account for general banking purposes. The Sturdivant Bank, therefore, was clearly an agent for the plaintiff company and the funds in the bank's possession in the account mentioned constituted a special deposit. When the bank became insolvent the money remaining in the payroll account constituted a trust fund which plaintiff is entitled to have declared a preferred claim against the bank.

This court has recently passed upon this very question. In the case of In Re Liquidation of Fidelity Bank & Trust Co. (Fidelity Bank & Trust Co. v. Ely Walker Dry Goods Co.) (Mo. App.), 77 S. W. (2d) 480, the dry goods company entered into an oral arrangement with the bank for opening up a payroll account whereby the employees of the dry goods company were enabled to cash their pay checks at the bank named. As the pay checks were drawn, the total amount to be paid out was determined and a sum sufficient to cover the exact amount of such payroll was deposited in the bank in the form of a check drawn against the dry goods company's general account in some other bank. The employees would present their pay checks to the bank in question for payment, and they would be paid by the bank out of the specific fund thus made available for such payment. At the time the arrangement was made between the bank and the dry goods company, the bank was advised that no checks other than payroll checks were to be honored out of the account. It appeared that such agreement was never changed or modified, but was adhered to down to the day the bank closed its doors. In that case this court said:

"So far as concerns the pay-roll account proper, we have no doubt of the correctness of the holding that it constituted a special account. That it was opened and maintained for the specific purpose of meeting pay checks as they were presented, that no other checks were to be honored against it, and that both the dry goods company and the bank knew and understood the special and limited purpose to be served by the account which was the only account carried by the dry goods company, all stands admitted in the record. In other words, the bank, pursuant to an express agreement between the parties, became the paymaster of the dry goods company, and in the course of the performance of such duty from time to time received funds

from the dry goods company intrusted to it for the single purpose of caring for the payroll, but the relationship thus existing between the parties was not that of debtor and creditor such as arises upon a general account kept in a bank, but to the contrary was that of principal and agent, with the bank being constituted the agent of the dry goods company, with a special fund in its hands to be used and employed for a single, specified purpose." [In Re Liquidation of Fidelity Bank & Trust Co., supra, l. c. 483.]

This court held in the above case that the payroll account mentioned should be accorded priority of payment.

It appearing, in the case at bar, that the account in question herein was a special deposit for a limited and specific purpose under a plan agreed to, understood and carried out by the Sturdivant Bank during the period shown in evidence, and up to the time the bank closed its doors, it is manifest that title to the funds in the account did not pass to the bank and the relation of debtor and creditor did not exist between the bank and plaintiff. The general creditors of the bank, therefore, cannot have any claim upon any portion of the fund which remained in the account to the credit of plaintiff at the time the bank went out of business. It also clearly appears that the assets of the bank which went into the hands of the Commissioner of Finance were augmented to the extent of the amount remaining in the account mentioned. It follows that plaintiff's claim should be declared a preferred claim and given priority of payment over those of general creditors of the Sturdivant Bank. [In Re Central Trust Co. of St. Charles (Hardin, et al., v. Central Trust Co. of St. Charles, et al.) (Mo. App.), 68 S. W. (2d) 919; In re Liquidation of Fidelity Bank & Trust Co. (Fidelity Bank & Trust Co. v. Ely Walker D. G. Co.) (Mo. App.), 77 S. W. (2d) 480; Vandivort v. Sturdivant Bank (Mo. App.), 77 S. W. (2d) 484; Central Coal & Coke Co. v. State Bank of Bevier (Mo. App.), 44 S. W. (2d) 188.]

The fact that the remainder of the fund in the Sturdivant Bank amounting to $10,531.72 had been commingled by the Sturdivant Bank with its other funds, cannot affect the right of plaintiff, under the facts in evidence, to have the same declared a preferred claim, for it has been held with respect to a special deposit that the title to the thing deposited remains with the depositor. In this connection this court has said:

"If the subject of the deposit be money, the bank has no right to mingle it with its other funds. However, the latter provision of the rule has of late been greatly relaxed, so that now a deposit of money may still be regarded as a special one, even though the funds may have been mingled with the other funds of the bank so that the identical money deposited can no longer be identified." [In re North

Missouri Trust Co. of Mexico, Mo. (Mattes v. Cantley, Commissioner of Finance) (Mo. App.), 39 S. W. (2d) 412, 414.]

Defendants argue that the account in question did not constitute a special deposit but that it was a general deposit and that plaintiff's plan of issuing drafts to its employees instead of checks was merely a means adopted by plaintiff for the purpose of enabling plaintiff to evade the payment of the federal check tax which was then in force. We are unable to agree with this contention. The fact that by making such an arrangement plaintiff was enabled to escape a federal tax on checks cannot have the effect of changing the relationship of plaintiff and the bank from that of principal and agent to that of creditor and debtor, nor can it change the character of the deposit from a special deposit to a general deposit under the undisputed evidence in this record. The fact that plaintiff deposited from time to time in the payroll account small sums representing cafeteria receipts did not change the account from a special to a general account because such deposits, according to the undisputed evidence, went into the fund for the sole and specific purpose of being used to build up the payroll account for subsequent payrolls.

We are satisfied that the circuit judge reached the right conclusion, and the judgment is, therefore, affirmed. *Hostetter, P. J.,* and *Becker, J.,* concur.