## AMERICAN SURETY CO. OF NEW YORK v. NORMANDY STATE BANK.

### No. 11475.

Circuit Court of Appeals, Eighth Circuit.
Jan. 18, 1940.

Rehearing Denied Feb. 9, 1940.

SANBORN, Circuit Judge, dissenting.

Henry Davis, of St. Louis, Mo. (Thomas S. McPheeters and Bryan, Williams, Cave & McPheeters, all of St. Louis, Mo., on the brief), for appellant.

Ivon Lodge, of St. Louis, Mo. (Otto O. Fickeissen, of. St. Louis, Mo., on the brief), for appellee.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal by the American Surety Company of New York from a judgment rendered against it in an action brought by appellee to recover on a policy insuring against loss by burglary. For convenience the parties will be referred to as they appeared below.

The Normandy State Bank is a Missouri banking corporation, with its place of business at Normandy, St. Louis County, Missouri. The State Bank of Anglum is a Missouri banking corporation, which had its place of business at Robertson, St. Louis County, Missouri. It was taken over for purposes of liquidation by the Commissioner of Finance of Missouri on April 19, 1933, and on May 6, 1933, pursuant to statutory authority, the Normandy State Bank was appointed by the Commissioner of Finance as Special Deputy Commissioner in charge of the State Bank of Anglum.

On May 28, 1931, approximately two years before the State Bank of Anglum was taken over for liquidation purposes by the Commissioner of Finance, the defendant American Surety Company of New York issued to that bank a policy of insurance by which, as modified, it agreed to indemnify the assured against loss by burglary or robbery of money and securities feloniously abstracted from within that part of any safe or vault to which the insurance applied, by any person who shall have made forcible entry therein by the use of tools, explosives, gas or other chemicals, while such safe or vault is duly closed and locked and located in the assured's premises, or located elsewhere after removal therefrom by burglars or robbers, and to pay the assured for loss by robbery of money and securities occurring within any part of the premises. Robbery is defined in the policy as "a felonious or forcible taking of property (a) by violence inflicted upon the person(s) having care or custody of, or rightful access to, the property; or (b) by putting such person(s) in fear of violence; or (c) by an overt felonious act committed in the presence of such person(s) and of which such person(s) were actually cognizant, provided such act is not committed by an officer or employee of the Assured."

The building is described in the policy as located at Robertson, Missouri, and the safe as a "York S & L Co.," burglar proof, the outer burglar-proof safe door, exclusive of bolt work, being three inches thick, with time lock, containing no burglar-proof chests or compartments, with no second or middle burglar-proof door or set of doors, the outer door being of solid construction. The safe is described as located within a vault of reinforced concrete thirty inches thick, the outer door constructed of burglar-proof steel three and one-half inches thick, containing a combination lock. The vault is described as being lined on all sides with steel and built of reinforced concrete thirty inches thick.

On May 20, 1933, the policy was modified by the insurance company, by attaching to it a rider, which reads in part as follows:

"The undermentioned policy is hereby modified so as to show the Assured as the Normandy State Bank, Commissioner in charge of affairs of State Bank of Anglum. Item 5 of the Policy is also modified so as to show the Vault described as follows:

| (a) | (b) | (c) | (d) | (e) | (h) |
|---|---|---|---|---|---|
| Nat. Safe & Lock Co. | Yes | 7 inches | Yes | Yes | Reinf. Concrete 18 inches |

"This endorsement shall take effect May 31st, 1933, 12 o'clock noon, Standard Time at Assured's address, and shall terminate simultaneously with this Policy."

The "Yes" under (b), (d) and (e) supra, indicates that the outer vault door was constructed of burglar-proof steel seven inches thick, that it had no combination lock, but that it had a time lock. This description applies substantially to the vault of the Normandy State Bank in its place of business at Normandy.

Since the date of its appointment as Deputy Commissioner, plaintiff has been in charge of the affairs of the State Bank of Anglum, administering them under the supervision and subject to the control and approval of Division No. 1 of the Circuit Court of St. Louis County, Missouri. Mr. H. H. Seib, who had been assistant cashier of the Anglum State Bank, was employed by the Commissioner of Finance to assist in the liquidation of that bank. Under agreement between the Commissioner of Finance and the plaintiff. it was agreed that plaintiff would make no charge for the services of any employee or officer of the bank, nor for rent, light, heat, water, telephone, or any other expense for which the bank was already obligated. Mr. Seib had direct charge of the affairs of the Anglum State Bank and had a key to the place of business, but not to the inner vault. He kept a complete set of books of the Anglum State Bank, separate and apart from the books and accounts of the Normandy State Bank. The money or cash of the suspended bank was not segregated nor separated from that of the Normandy State Bank, but the ledger accounts of that bank at all times showed the amount of balances of the closed bank on hand. The Normandy State Bank paid no interest on the money. From May 19, 1933, to October 11, 1933, the amount of cash which the Normandy State bank had on hand each day and the amount of credits of the Anglum State Bank are shown. On sixty-four of these days the cash on hand was less than these credits. On the other days, including October 11, 1933, the cash on hand exceeded the credits in favor of the Anglum State Bank.

On October 11, 1933, two armed men forced the vault and safe in the Normandy State Bank to be opened and they took from the safe $7,611.30 in currency and coins. On June 11, 1936, the sheriff returned to plaintiff the sum of $235.14, which he had taken from one of the bandits, and this sum is credited by plaintiff on the claim against the defendant.

The action was tried without a jury upon stipulated facts, which the court adopted as its findings, and concluded as a matter of law that the defense that plaintiff had no funds in the vault of the Normandy State Bank was without support in fact as well as in law, that the rider attached to the policy changed the location of the risk, and that defendant waived this defense by its amended answer and by its correspondence with plaintiff. Judgment was accordingly entered in favor of plaintiff.

On this appeal defendant contends: (1) that the contract was not modified as to place of insurance; (2) that the defendant did not waive the defense that the loss was not covered by the contract; (3) that the contract did not insure against loss of money which plaintiff had in its possession in its private capacity, and plaintiff was not in possession of any money in its official capacity.

As originally written, the State Bank of Anglum was the sole assured in the policy, which covered burglary from a described safe and robbery from within any part of the premises occupied by the assured, or its officers or employees. Following the appointment of plaintiff as Deputy Commissioner, and after it had taken over the affairs and money of the Anglum State Bank, the policy was modified by attaching a "rider," which changed the description of the vault, and which substituted the "Normandy State Bank, Commissioner in charge of affairs of State Bank of Anglum" as the assured. This rider contained a recital that, "This endorsement shall take effect May 31st, 1933, 12 o'clock noon, Standard Time, at Assured's address."

The description of the place was an essential part of the insurance contract. By the provision of the rider, the Normandy State Bank, in its representative capacity, was named as the assured and its address was 7301 Natural Bridge Road, Normandy, St. Louis County, Missouri. There was clearly a change of location effected by this rider. A different vault was also described and the rider says it was to take effect May 31, 1933 "at Assured's address." This rider necessarily referred to the address of the new assured. The changed description in the rider coincides substantially with the description of the vault of the bank at Normandy. The description, when considered in connection with the known surrounding facts and circumstances, clearly indicates that it was the intention of the parties to cover the bank premises at Normandy. If this were doubtful, the most that could be claimed would be that the provisions of the policy were ambiguous. In such circumstances, the construction most favorable to the as-

sured must be adopted. Bothmann v. Metropolitan Life Ins. Co., 299 Mo. 269, 252 S.W. 652; Turner v. Fidelity & Casualty Co., 274 Mo. 260, 202 S.W. 1078, L.R.A. 1918E, 381; Wharton v. Aetna Life Ins. Co., 8 Cir., 48 F.2d 37; New York Life Ins. Co. v. Calhoun, 8 Cir., 97 F.2d 896. On this phase of the case, we conclude that the policy as modified by the rider covers the bank premises at Normandy.

One seeking to recover on a policy of burglary and theft insurance must, of course, allege and prove that he has an insurable interest in the property described in the policy. Under the Missouri law, title to the money collected for the closed bank remained in it. The interest of the liquidating bank was, therefore, that of possessor or bailee. Any bailee or person in custody of property and responsible for it may take insurance in his own name, and in the event of loss may recover the full amount named in the policy up to the value of the property. Ferguson v. Pekin Plow Co., 141 Mo. 161, 42 S.W. 711; Phoenix Ins. Co. v. Erie & W. Transp. Co., 117 U.S. 312, 6 S.Ct. 750, 29 L.Ed. 873; Home Insurance Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868. It has been held that one having the care, custody or possession of property for another, though without liability and without any pecuniary interest, may nevertheless obtain insurance upon such property for the benefit of the owner. Schaeffer v. Anchor Mutual Fire Ins. Co., 113 Iowa 652, 85 N.W. 985; Fire Ins. Ass'n v. Merchants', etc., Transportation Co., 66 Md. 339, 7 A. 905, 59 Am.Rep. 162. Here, the plaintiff, in its representative capacity, had a special property in the funds, was charged with responsibility of their custody and safe-keeping, and hence, had an insurable interest. Germania Fire Ins. Co. v. Thompson, 95 U.S. 547, 24 L.Ed. 487; Mahoney v. State Ins. Co., 133 Iowa 570, 110 N.W. 1041, 9 L.R.A.,N.S., 490.

It is to be observed that the assured in this policy is "Normandy State Bank, Commissioner in charge of affairs of State Bank of Anglum." This description of the assured is broad enough to cover all interest in money collected for and belonging to the closed bank. The defendant here, with full knowledge of the nature of the interest of the named insured, recognized such interest as sufficient to support a policy, and hence, it ought not now to be permitted to question the sufficiency of such interest. Franklin v. National Ins. Co., 43 Mo. 491.

Under the contract of insurance, the insurance company was insuring the closed bank against loss of its money by burglary or robbery while deposited in the safe of the Normandy State Bank, and the contract should be construed in the light of the Missouri law as to what was money of the closed bank. Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S.W.2d 810.

On the morning of October 11, 1933, when the robbery occurred, a total of $7,761.30 was in the safe. Of this amount, $7,611.30 was taken by the robbers. It appears that on the 9th of October, two days preceding the robbery, the Anglum Bank account was $7,798.02. That amount had been substantially unchanged for several days, and we may assume that it was that sum on the 11th of October, when the robbery occurred. The total cash on hand on the 10th of October, the day preceding the robbery· was $8,949.00. Defendant made no claim below, and makes no claim here as to the amount of recovery if the money taken was insured against loss by theft or robbery.

The contention that the stolen money was not the property of the Normandy State Bank in its capacity as Commissioner in charge of the affairs of the Anglum State Bank is bottomed upon the fact that the money of the closed bank was not segregated, nor otherwise physically earmarked, but was mingled with the funds of the Normandy State Bank, and that this in effect gave rise to the relation of debtor and creditor and the funds so deposited constituted a general deposit, title to which was vested in the Normandy State Bank in its private capacity.

Section 5331, Revised Statutes of Missouri 1929, Mo.St.Ann. § 5331, p. 7556, requires that the funds of a bank in liquidation be deposited by the Commissioner in a state bank or trust company. The Supreme Court of Missouri, in Re Mt. Vernon Bank, 334 Mo. 549, 66 S.W.2d 850, 854, has held that funds so deposited are trust funds which "constitute a special deposit." In the course of the opinion in that case it is said: " * * * the relation of trustee and cestui exists between the parties; that, because of the transaction, the trustee (the bank) did not obtain title to the cestui's money or property but mere-

ly got possession of it; that, so long as the trustee has it, the cestui can reclaim it as his own, whether the trustee be solvent or insolvent; and that it is only necessary for the cestui to show that the trustee or its receiver still has it, either in its original form or commingled with its other assets."

Title to the money of the Anglum Bank did not therefore pass to the Normandy State Bank in its private capacity merely because the currency or coins were not earmarked nor segregated from the bank's own funds. See, also: State v. Bank of Southeast Missouri, Mo.Sup., 107 S.W.2d 1; Brown v. Maguire's Real Estate Agency, Mo.App., 101 S.W.2d 41; In re Sturdivant Bank, 232 Mo.App. 55, 89 S.W.2d 89; In re North Missouri Trust Co., Mo. App., 39 S.W.2d 412, 414. In Re North Missouri Trust Co., supra, the St. Louis Court of Appeals in discussing the rule with reference to special deposits, among other things, said: "The title to the thing deposited remains with the depositor, and, as a general rule, if the subject of the deposit be money, the bank has no right to mingle it with its other funds. However, the latter provision of the rule has of late been greatly relaxed, so that now a deposit of money may still be regarded as a special one, even though the funds may have been mingled with the other funds of the bank so that the identical money deposited can no longer be identified."

The same court in Brown v. Maguire's Real Estate Agency, supra, said [101 S. W.2d 48]: "It is hornbook law that money collected by an agent for his principal when collected becomes a trust fund, so that a trust relation, and not a relation of debtor and creditor, arises between the agent and his principal, and whoever asserts that the circumstances are such that the relation has become that of debtor and creditor, and not that of trustee and cestui qui trust, has the burden of so showing."

We conclude that the funds taken by the robbers were trust funds, title to which had not vested in the Normandy State Bank privately; that the assured had an insurable interest therein, and hence, was entitled to recover. The judgment appealed from is therefore affirmed.

SANBORN, Circuit Judge (dissenting).

I am not convinced that the policy in suit covered robbery of moneys deposited with the Normandy State Bank by the liquidator of the State Bank of Anglum, and which were in the possession, custody and control of the Normandy State Bank at the time of the robbery. The funds which the liquidator had deposited with the Normandy State Bank were represented by a credit on the books of that bank. Under the law of Missouri the deposit was a special deposit in the sense that it was a deposit of trust funds which could be reclaimed at any time. These funds, however, were lawfully in the possession and custody and under the complete control of the Normandy State Bank until such time as they were reclaimed. The money taken by robbers from the vault of the bank was cash which it had on hand at the close of business on the day prior to the robbery and which it was using and had a right to use in the transaction of its business. If the robbery had not occurred, the bank would have continued to use the cash for its own purposes in carrying on its own business. It was at all times a solvent going concern. The day after the robbery it was under exactly the same obligation to repay to the liquidator, upon demand, the amount of the trust deposit as it was the day before the robbery. The liquidator lost nothing by virtue of the robbery. The loss was that of the Normandy State Bank. It was entitled to recover its loss from the company which had insured it against robbery. I think that the effect of the decision of this Court might be to jeopardize the funds of insolvent banks on deposit in solvent banks, by making it possible for the latter and their insurers to assert, in case of robbery, that the cash taken was that of the insolvent banks to the extent of their special deposits. I believe that this is not the law of Missouri.

It is my conclusion that the policy in suit did not cover funds deposited by the liquidator. I think the policy covered any funds of the liquidator which were not on deposit but were kept by it in the safe of the Normandy State Bank. I would rule that the liquidator has failed to prove that it sustained any loss. I therefore dissent.