AMERICAN SURETY COMPANY OF NEW YORK, A CORPORATION, APPELLANT, v. NORMANDY STATE BANK, A CORPORATION, RESPONDENT.—167 S. W. (2d) 436.

St. Louis Court of Appeals.   Opinion filed January 5, 1943.

40

*Bryan, Williams, Cave & McPheeters* for appellant.

*Otto O. Fickeissen, Ivon Lodge* and *Fordyce, White, Mayne, Williams & Hartman* for respondent.

SUTTON, C.—This is an action whereby plaintiff, American Surety Company of New York, seeks to recover of defendant, Normandy State Bank, by way of subrogation, a portion of the amount it paid to satisfy a judgment, which defendant in its representative capacity as deputy commissioner of finance in charge of the affairs of the State Bank of Anglum had obtained against plaintiff. There was a judgment for defendant, and plaintiff appeals.

The facts, though very much involved, are undisputed.

On May 28, 1931, the State Bank of Anglum, engaged in banking at Robertson, in St. Louis County, took out a policy of insurance with plaintiff, insuring said State Bank of Anglum against loss by

burglary in the sum of $10,000 and against loss by robbery in the sum of $10,000.

On May 6, 1933, O. H. Moberly, Commissioner of Finance of the State of Missouri, took over said State Bank of Anglum for liquidation, and appointed defendant, Normandy State Bank, as special deputy commissioner in charge of the affairs of said State Bank of Anglum, under the provisions of section 5323, Revised Statutes Missouri 1929, now section 7917, Revised Statutes Missouri 1939, and the Normandy State Bank in its representative capacity as special deputy commissioner thereafter administered the affairs of said State Bank of Anglum under the supervision and subject to the orders, control, and approval of the Circuit Court of St. Louis County.

On May 20, 1933, the policy of burglary and robbery insurance was modified so as to show the insured as the Normandy State Bank, commissioner in charge of the affairs of the State Bank of Anglum, and was also modified so as to show the vault and safe as that of the Normandy State Bank, the modification "to take effect May 31, 1933, at twelve o'clock noon, standard time, at assured's address." The policy insures against loss by the assured by burglary of moneys and securities feloniously abstracted during the day or night from within that part of any safe or vault to which the insurance applies by any person or persons who shall have made forcible entry therein by the use of tools, explosives, electricity, gas, or other chemicals, while such safe or vault is duly closed and locked and located in the assured's premises as specified in the policy, and insures against loss by the assured by robbery of moneys and securities from within any part of said premises occupied by the assured or his officers or employees exclusively.

The policy povides that if the assured carries other insurance covering such loss as is covered by this policy the assured shall not recover from the company under this policy a larger proportion of any such loss than the amount applicable thereto as hereby insured bears to the total amount of all valid and collectible insurance covering such loss.

The policy also provides as follows:

"The Company shall be subrogated in case of payment of any claim under this policy, to the extent of such payment, to all of the assured's rights of recovery therefor against persons, firms, corporations, or associations."

Mr. H. H. Seib, who had been assistant cashier of the Anglum State Bank, was employed by the commissioner of finance to assist in the liquidation of that bank. Mr. Seib had direct charge of the affairs of the Anglum State Bank and had a key to the place of business but not to the inner vault. He kept a complete set of books of the Anglum State Bank separate and apart from the books and accounts of the Normandy State Bank. The money or cash of the

Anglum State Bank was not segregated or separated from that of the Normandy State Bank, but the ledger accounts of that bank at all times showed the amount of balances of the Anglum State Bank on hand. The Normandy State Bank paid no interest on the money.

On October 11, 1933, two armed men forced the vault of the safe in the Normandy State Bank to be opened, and they took from the vault and safe $8067.52 of currency and coins.

On June 11, 1936, the sheriff returned to the Normandy State Bank as special deputy commissioner in charge of the affairs of the State Bank of Anglum $235.14, which he had recovered from one of the bandits, and this sum was credited by the Normandy State Bank as such special deputy commissioner on its claim against the American Surety Company.

On October 11, 1933, the amount of cash which the Normandy State Bank had on hand, as shown by the books of the Anglum State Bank as kept by Mr. Seib, exceeded the credits in favor of the Anglum State Bank, which on that date amounted to $7,611.30.

At the time of the burglary or robbery the Normandy State Bank in its private capacity as a banking institution and not in its representative capacity as special deputy commissioner of finance held a policy of insurance issued by the National Surety Corporation, insuring the bank against loss by burglary of its own money and the money of others held by it, in the sum of $12,000, and against loss by robbery of its own money and the money of others held by it, in the sum of $4000.

By direction of O. H. Moberly, Commissioner of Finance, the Normandy State Bank in its representative capacity as special deputy commissioner in charge of the affairs of the State Bank of Anglum instituted suit against the American Surety Company to recover $7611.30 under the policy held by it with the American Surety Company, alleging in its petition that the money taken by the bandits from the vault and safe of the Normandy State Bank belonged to the State Bank of Anglum.

At the same time the Normandy State Bank in its individual capacity brought suit against the National Surety Corporation to recover under the policy issued to it by said National Surety Corporation the entire loss of $8067.52, alleging that the bandits took this amount from its vault and safe by burglary. Both these suits were brought in the Circuit Court of St. Louis County. The same attorneys represented the plaintiff in each of these suits. Both suits were later removed to the United States District Court.

The suit of the Normandy State Bank in its representative capacity as special deputy finance commissioner against the American Surety Company resulted in a judgment for $7376.16, which was the amount sued for less $235.14 recovered from one of the bandits after the suit was brought, with interest amounting to $2245.96, making the

aggregate amount of the judgment $9622.12. On appeal by the American Surety Company to the United States Circuit Court of Appeals the judgment of the district court was affirmed. [See American Surety Co v. Normandy State Bank, 108 F. (2d) 819.] The chief issue in that case arose with respect to the ownership of the stolen money. It was the contention of the American Surety Company that the money was not the property of the Normandy State Bank in its capacity as special deputy commissioner in charge of the affairs of the Anglum State Bank but was the property of the Normandy State Bank in its individual capacity. This contention was bottomed upon the fact that the money of the Anglum Bank was not segregated, nor otherwise physically earmarked, but was mingled with the money of the Normandy State Bank, and that this in effect gave rise to the relation of debtor and creditor, and that the deposits of the money of the Anglum Bank constituted general deposits so that the title to the money deposited vested in the Normandy State Bank in its private capacity, whereas it was the contention of the Normandy State Bank as special deputy commissioner that the money deposited constituted special deposits giving rise to a trust relation so that the title to the money deposited remained in the Normandy State Bank in its official capacity. The issue was determined against the American Surety Company and in favor of the Normandy State Bank as special deputy commissioner.

The American Surety Company also pleaded in that case that at the time of the burglary or robbery the Normandy State Bank in its private capacity held a valid and collectible policy of insurance with the National Surety Corporation insuring it against loss by burglary of its own moneys and the moneys of others held by it in the sum of $12,000, and for loss by robbery in the sum of $4000; that if the Normandy State Bank lost any moneys held or possessed by it in its official capacity it could not recover from the American Surety Company a larger proportion than such loss bore to the total amount of all collectible insurance covering such loss; that if a loss for which the American Surety Company was liable was by robbery its proportion of the loss would be $5436.64, and if the loss was by burglary its proportion of the loss would be $3,459.68. The judgment, however, was for the full amount of the policy in suit without any reduction on account of the policy of the National Surety Corporation.

While the suit of the Normandy State Bank in its official capacity was being liquidated the suit of the Normandy State Bank in its private capacity remained pending, but inactive, in the district court. That suit was brought for $8067.52, the entire amount of money taken by the bandits, which was $456.22 in excess of the balance to the credit of the Anglum Bank at the date of the burglary or robbery.

There was a clause in the policy of the National Surety Corporation similar to that in the policy of the American Surety Company with

respect to additional insurance. The National Surety Corporation contended that the loss was by robbery and not by burglary, and that therefore the amount of the coverage of its policy was only $4000 and that the pro rata portion of the loss for which it was liable under the additional insurance clause was $2447.34, and so pleaded in its answer in the suit brought against it by the Normandy State Bank, and deposited that amount, by way of a tender, with the clerk of the district court where the suit was brought.

After the suit against the American Surety Company had terminated in a final judgment the attorneys for the American Surety Company and the attorneys for the Normandy State Bank in its official capacity and for the Normandy State Bank in its private capacity came together and entered into an agreement or arrangement for the disposition of the suit against the National Surety Corporation and for the payment of the judgment against the American Surety Company, which, at that time, including accrued interest on the judgment, amounted to $10,247.55. It was agreed that the American Surety Company should have credit on the judgment against it for $1991.12 to be paid to the Normandy State Bank in its official capacity out of the deposit of $2447.34 held by the clerk of the district court, and that the remainder of such deposit, $456.22, being the amount of money stolen in excess of the balance in the bank to the credit of the Anglum Bank at the date of its burglary or robbery, should be paid to the Normandy State Bank in its private capacity. Pursuant to this agreement or arrangement the district court ordered the clerk of the court in the suit then pending against the National Surety Corporation to pay to the Normandy State Bank as deputy commissioner in charge of the affairs of the State Bank of Anglum the sum of $1991.12 and to the Normandy State Bank in its private capacity the sum of $456.22, and the money was paid as so ordered. The court further ordered that "the cause be dismissed with prejudice at plaintiff's costs," and the American Surety Company paid to the Normandy State Bank in its official capacity as deputy commissioner $8256.43, being the amount of the judgment with interest, totaling $10,247.55, less the credit of $1991.12 paid out of the deposit held by the clerk of the district court.

Plaintiff in the present suit seeks to recover $5268.69, which it alleges is the amount it paid of the loss covered by its policy.

Plaintiff seeks to recover said sum on the theory that it is entitled to be subrogated to the rights of the Normandy State Bank as special deputy commissioner in charge of the affairs of the Anglum Bank under the law of subrogation and also under the provision for subrogation contained in the policy. Plaintiff contends in this suit, as it contended in the suit against it in the United States District Court, that the relation of debtor and creditor, not the relation of trustee and *cestui que trust*, existed between the Normandy State Bank

in its private capacity and the Normandy State Bank in its official capacity as special deputy commissioner in charge of the affairs of the Anglum Bank. So that in paying the judgment which was obtained against it on the theory that the money taken by the bandits belonged to the Normandy State Bank in its official capacity, it really paid a debt owing by the bank in its private capacity to the bank in its official capacity, and that having been compelled to make such payment by virtue of the judgment, it is entitled to be subrogated to the right of the bank in its official capacity to have of the bank in its private capacity the amount of such indebtedness so paid by plaintiff.

Assuming that the relation of debtor and creditor and not the relation of trustee and *cestui que trust* existed between the parties as plaintiff contends, whether or not this would give rise to a right of subrogation we need not stop to inquire.

Plaintiff concedes that if there was a trust relation and not a relation of debtor and creditor existing with respect to the money taken by the bandits it is not entitled to recover.

The parties to this suit agree, as they ought, that the judgment in the former suit is not *res adjudicata* as between them respecting the issue as to whether or not a trust relation existed between the bank in its private .capacity and the bank in its official capacity. This is so because the bank in its private capacity was not a party to that suit. [Dibert v. D'Arcy, 248 Mo. 617, l. c. 661, 154 S. W. 1116·; Missouri, Kansas & Texas Ry. Co. v. American Surety Co., 291 Mo. 92, l. c. 109, 236 S. W. 657·; Meyer v. Nischwitz, 198 Mo. App. 101, l. c. 105, 199 S. W. 744; Walker v. Manzke (Mo. App.), 10 S. W. (2d) 316; State ex rel. Hospes v. Branch, 134 Mo. 592, l. c. 605, 36 S. W. 226; Kirk v. Metropolitan Life Ins. Co., 225 Mo. App. 756, 38 S. W. (2d) 519; Bennett v. Accident, Fire & Life Assur. Corp., 213 Mo. App. 421, l. c. 430, 255 S. W. 1076.]

The United States Circuit Court of Appeals in disposing of the former suit on appeal from the district court, American Surety Co. v. Normandy State Bank, 108 F. (2d) 819, l. c. 822, said:

"Section 5331, Revised Statutes of Missouri, 1929 (Mo. St. Ann., Sec. 5331, p. 7556), requires that the funds of a bank in liquidation be deposited by the Commissioner in a state bank or trust company. The Supreme Court of Missouri, in In re Mt. Vernon Bank, 334 Mo. 549, 66 S. W. (2d) 850, 854, has held that funds so deposited are trust funds which 'constitute a special deposit.' In the course of the opinion in that case it is said: '. . . the relation of trustee and *cestui* exists between the parties; that, because of the transaction, the trustee (the bank) did not obtain title to the *cestui's* money or property but merely got possession of it; that, so long as the trustee has it, the *cestui* can reclaim it as his own, whether the trustee be solvent or insolvent; and that it is only necessary for the *cestui* to

show that the trustee or its receiver still has it, either in its original form or commingled with its other assets.'

"Title to the money of the Anglum Bank did not therefore pass to the Normandy State Bank in its private capacity merely because the currency or coins were not earmarked nor segregated from the bank's own funds. [See, also: State v. Bank of Southeast Missouri (Mo. Sup.), 107 S. W. (2d) 1; Brown v. Maguire's Real Estate Agency (Mo. App.), 101 S. W. (2d) 41; In re Sturdivant Bank, 232 Mo. App. 55, 89 S. W. (2d) 89; In re North Missouri Trust Co. (Mo. App.), 39 S. W. (2d) 412, 414.] In Re North Missouri Trust Co., *supra,* that St. Louis Court of Appeals in discussing the rule with reference to special deposits, among other things, said: 'The title to the thing deposited remains with the depositor, and, as a general rule, if the subject of the deposit be money, the bank has no right to mingle it with its other funds. However, the latter provision of the rule has of late been greatly relaxed, so that now a deposit of money may still be regarded as a special one, even though the funds may have been mingled with the other funds of the bank so that the identical money deposited can no longer be identified.'

"The same court in Brown v. Maguire's Real Estate Agency, *supra,* said (101 S. W. (2d) 48): 'It is hornbook law that money collected by an agent for his principal when collected becomes a trust fund, so that a trust relation, and not a relation of debtor and creditor, arises between the agent and his principal, and whoever asserts that the circumstances are such that the relation has become that of debtor and creditor, and not that of trustee and *cestui que trust,* has the burden of so showing.'

"We conclude that the funds taken by the robbers were trust funds, title to which had not vested in the Normandy State Bank privately; that the assured had an insurable interest therein, and hence, was entitled to recover."

In Security National Bank Savings & Trust Co. v. Moberly, 340 Mo. 95, 101 S. W. (2d) 33, l. c. 37, our Supreme Court quoted with express approval from the opinion of this court in Vandivort v. Sturdivant Bank, 77 S. W. (2d) 484, l. c. 487, as follows:

"Whether or not the bank in fact commingles the deposit with its general funds and uses it as its own is not determinative of the right or not of the depositor to claim the deposit as a special deposit, *but it is the right or not of the bank to so commingle and use the deposit that is determinative.* (Our Italics.) If when the deposit is made there is an agreement, express or implied, that it shall not be commingled with the other assets of the bank and used as its own, but shall be kept intact as a separate deposit for a specific purpose, this constitutes a special deposit, and the fact that the bank without right commingles the deposit with its other assets and uses it as its own, so that it cannot thereafter be traced and identified, does

not defeat the right of the depositor to have the amount of the deposit out of the assets of the bank.''

The court in that case disapproved what was said by the Kansas City Court of Appeals in In re Home Trust Co. of Fulton, 69 S. W. (2d) 312, l. c. 316, as follows:

''However, the rule has been greatly relaxed so that, where the money deposited is to be used for a specifically designated purpose, it may still be regarded as a special one, even though the funds were deposited under an agreement allowing them to become mingled with other funds in the bank and they are so mingled that the identical money deposited can no longer be identified.''

And the court then quoted, as stating the rule correctly according to the greater weight of authority, the following from Restatement of the Law:

''If money is deposited in bank for a special purpose the bank is a trustee or bailee of the money if, but only if, it is the understanding of the parties that the money deposited is not to be used by the bank for its own purposes.''

The cases all hold that the making of a general deposit of a trust fund in a bank by a trustee having authority to do so does not give rise to a trust relation between the bank and the trustee. [Security National Bank Savings & Trust Co. v. Moberly, *supra*; Paul v. Draper, 158 Mo. 197, 59 S. W. 77; Brown v. Maguire's Real Estate Agency (Mo. App.), 101 S. W. (2d) 41; Parker v. Central Trust Co., 229 Mo. App. 1244, 71 S. W. (2d) 106.]

In City of Fulton v. Home Trust Co., 336 Mo. 239, 78 S. W. (2d) 445, l. c. 449, the court defined a special deposit as follows:

''A special deposit of money in a bank usually consists of the delivery thereof to the bank under or pursuant to an agreement or arrangement between the depositor and the bank whereby the bank undertakes to hold same for a prescribed purpose, assuming the relation of a mere trustee or bailee thereof, and to return the same money or its equivalent to the depositor, or to a designated third person, upon the happening of the event agreed upon.''

This definition had the approval of our Supreme Court in Security National Savings Bank & Trust Co. v. Moberly, *supra*. [See, also: In re Wellston Trust Co. (Mo. App.), 136 S. W. (2d) 430, l. c. 432; In re Sturdivant Bank (Mo. App.), 89 S. W. (2d) 89.]

In In re Mt. Vernon Bank, 334 Mo. 549, 66 S. W. (2d) 851, l. c. 853, cited in support of the opinion in American Surety Company v. Normandy State Bank, the court, in discussing the legislative intent in the enactment of the statute in relation to the deposit of funds of other banks by liquidators of insolvent banks, said:

''It is said in the briefs that at the time it was enacted the Legislature necessarily had in mind 'that the courts of this State had been declaring equitable preferences to creditors in the liquidation of banks

and other insolvents.'. We think so too. We think they also had in mind that the funds collected by the commissioner from the liquidation of a failed bank should only be temporarily placed in another depository, until distributed to those found entitled to them at the earliest possible moment; that such funds would be derived from an entirely new source as far as such depository was concerned and would necessarily increase its assets; that, because distributions should be frequently and speedily made therefrom, these funds should remain in liquid form readily available and not be used as ordinary deposits in usual banking loans and investments; and that they were, in their very nature, trust funds being administered by a public officer for the benefit of others under the supervision of a court of equity. We think that for these reasons they intended that title to them should not pass in the depository where they were kept (as in the ordinary case of usual deposits even of trust funds by a trustee), but that they should retain their character as trust funds and should constitute a special deposit which could be reclaimed by the commissioner in case of insolvency for the benefit of the trust estate of which they formed a part. We hold that the statute makes them trust funds in the hands of the insolvent depository, and that they are entitled to priority of payment on an equality with any other priority which is granted under any authority whether statutory or upon the equitable principles of reclaiming the proceeds of trust funds.''

That case on its facts is substantially identical with the case at bar. We regard it as controlling here. While it is like our case on its facts it is unlike any of the other cases to which we have referred. It must be remembered that the commissioner of finance in charge of the affairs of an insolvent bank acts in an official capacity and under the supervision and direction of the court and the funds in his hands as commissioner when deposited in another bank by him are not subject to be checked out as in the case of ordinary deposits. In respect to the disbursement of the funds so deposited he is under the direction and supervision of the court and can only disburse the fund in accordance with the court's orders. It was not the intent of the Legislature that he should make a general deposit of the funds but the funds are only to be deposited for a special purpose and to be kept intact for the discharge of that purpose, that is, to be disbursed in payment of the liabilities of the bank in liquidation as ordered by the court. This does not mean, of course, that the identical money deposited is to be kept intact, but it means that the identical money or its equivalent must be kept intact, for disbursement as ordered by the court.

Moreover, in this case all the parties concerned treated the fund deposited with the defendant bank as a trust fund belonging to the Anglum Bank. This they did by having the fund insured as the

fund of the Anglum Bank. They thus evidenced an understanding that the title to the fund remained in the defendant bank in its official capacity as special deputy commissioner.

Plaintiff urges in argument that if the law as decided by the United States Circuit Court of Appeals in American Surety Company v. Normandy State Bank and by our Supreme Court in the Mt. Vernon Bank case is to be the law of this State, it will jeopardize the funds of insolvent banks on deposit in solvent banks, and by way of illustration says that if the liquidator of an insolvent bank should deposit $50,000 of the insolvent bank's money in another bank, and if the liquidator had insurance of only $10,000, it would be possible for the solvent depository bank to assert in case of loss that the money taken was the property of the insolvent bank, so that the liquidator would neither have insurance adequate to cover the loss nor a claim against the solvent depository bank as its creditor. It is possible that this might happen, but it is also possible, if the law were declared as plaintiff would have it, that the liquidator would find himself with nothing but a worthless claim against an utterly insolvent and assetless depository bank.

Moreover, plaintiff's argument assumes that the liquidator of an insolvent bank will not keep the funds of the bank suitably protected by insurance.

It is manifest, in view of the authorities, that in this case the relation of the parties was that of trustee and *cestui que trust,* not of debtor and creditor. For this reason, if for no other, plaintiff is not entitled to recover.

The judgment of the circuit court should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.